ROBERT L. ESENSTEN (Bar No. 65728)
    resensten@esenstenlaw.com
JORDAN S. ESENSTEN (Bar No. 264645)
    jesensten@esenstenlaw.com
**ESENSTEN LAW**
12100 Wilshire Boulevard, Suite 1660
Los Angeles, California 90025
Telephone:   (310) 273-3090
Facsimile:    (310) 207-5969

Attorneys for Plaintiff ARLENE
ROSENBLATT, on behalf of herself and all
others similarly situated

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLENE ROSENBLATT, an individual, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>THE CITY OF SANTA MONICA, a municipal corporation; and THE CITY COUNCIL OF THE CITY OF SANTA MONICA, its governing body,<br><br>            Defendants. | CASE NO.<br><br>**PUTATIVE CLASS ACTION**<br><br>**COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff ARLENE ROSENBLATT, an individual, on behalf of herself and all others similarly situated, hereby files this Complaint against Defendants CITY OF SANTA MONICA and THE CITY COUNCIL OF THE CITY OF SANTA MONICA (jointly, "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.      This case presents a federal question arising under the Commerce Clause of the Constitution of the United States, Art. I, § 8, cl. 3, the Fifth Amendment of the Constitution of the United States, and 42 U.S.C. § 1983. This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. § 1988. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367.

2.      Venue is proper in this District under 28 U.S.C. § 1391, as Defendants reside in this District and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

3.      Plaintiff ARLENE ROSENBLATT is a resident of the City of Santa Monica in the County of Los Angeles, State of California.

4.      Plaintiff is informed and believes and thereupon alleges that Defendant THE CITY OF SANTA MONICA ("the City" or "Santa Monica") is a municipal corporation situated in the County of Los Angeles and organized under the laws and Constitution of the State of California and freeholders' charter.

5.      Plaintiff is informed and believes and thereupon alleges that Defendant THE CITY COUNCIL OF THE CITY OF SANTA MONICA ("City Council") is the City's duly-elected governing body, created and organized under Article VI of the Charter of the City of Santa Monica.

///

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

6.      Plaintiff is informed and believes and thereupon alleges that at all times mentioned, each of the Defendants was (and still is) the employee, agent, partner, joint venturer, alter ego, and/or co-conspirator of the other such defendants.  At all times mentioned, a unity of interest in ownership and other interests between each of such Defendants has existed such that any separateness ceased to exist between them.  The exercise of complete dominance and control over the other entities and their properties, rights and interests, rendered such entities as mere shells and instrumentalities of each other.

## **INTRODUCTION**

7.      This action arises from the City's recent enactment of an ordinance that purports to prohibit property owners of residential property in Santa Monica from renting out their properties on a short-term basis.

8.      Once a purely locally-driven business, travel lodging, thanks to the Internet, has become an interstate activity with interstate actors, instrumentalities, and competition.  In recent years, the Internet has furnished property owners with an online marketplace to list privately-owned properties for rent on a short-term basis and engage in interstate transactions with travelers from across the country and the world.  The increased availability of short-term rentals has afforded travelers with a greater supply of lodging options, providing them with affordable alternatives for transient lodging and, at the same time, driving down prices of otherwise expensive hotels.  The lower costs of lodging and increased affordability of traveling, in turn, have resulted in increased travel across the country, increased tourism, and increased travel spending.

9.      While the greater supply of lodging options and the lower lodging costs have boosted travel and have facilitated transactions between persons across the country and the world, these interstate commerce benefits have harmed local municipalities.  The increased interstate competition diverts potential business away

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

1  from the hotel industry and has substantially negatively impacted hotel revenue.

2  This, coupled with the lower lodging costs resulting from the online marketplace for

3  short-term rentals, translates into lower revenues municipalities receive from

4  "Transient Occupancy Taxes" ("TOTs"), a local transient tax that hotels (and

5  sometimes listing owners of short-term residential units) remit to municipalities

6  based upon revenues received from transient lodging.

7       10.    The City of Santa Monica, one of the most popular and desirable tourist

8  destinations in the country, receives substantial revenues from the 14% TOT that it

9  collects from the ultra-luxurious, highly occupied, and pricey hotels in the City.  But

10  as the online marketplace for short-term rentals became more prominently used

11  among travelers, Santa Monica tourists increasingly opted for less expensive

12  residential rentals, making Santa Monica more accessible and affordable for

13  interstate and intrastate travel.

14       11.    Seeking to reverse the trend, increase its own revenues, and promote

15  purely local economic interest, Defendants enacted Ordinance 2484CCS ("the

16  Ordinance") that essentially bans the online marketplace for short-term vacation

17  rentals and forces travelers desiring to lodge in the City to choose a pricey Santa

18  Monica-based hotel as their only lodging option.  The Ordinance, among other

19  things:

20       a.    Prohibits property owners from engaging in short-term "vacation

21  rentals" of their properties and from listing or advertising any "vacation rentals" on

22  any website.  A "vacation rental" is defined as a rental for a period of 30 days or less

23  while the property owner does not simultaneously occupy the residence.  Santa

24  Monica hotels are exempted from this prohibition.

25       b.    Permits "home sharing," whereby the listing owner rents a

26  portion of his or her residential unit for a period of 30 days or less *while*

27  *simultaneously occupying the residence*, provided that the listing owner obtains and

28  possesses a business license authorizing such activity.  By definition, home sharing

is available only to Santa Monica residents and is unavailable to owners of Santa Monica property that reside out of state.

      c.    Criminalizes any conduct that violates the Ordinance, including conduct that takes place entirely outside of the borders of the City, such as advertising vacation rentals on the Internet.

12.    The Ordinance violates a number of provisions of the Constitution of the United States, including the Dormant Commerce Clause, Art. I, § 8, cl. 3, and the Takings Clause of the Fifth Amendment.  The Ordinance violates the Dormant Commerce Clause because it substantially burdens interstate commerce and discriminates in favor of Santa Monica businesses and interests at the expense of non-Santa Monica residents and interests.  The Ordinance violates the Takings Clause of the Fifth Amendment because it constitutes an unreasonable restriction on the use of privately-owned property.  Accordingly, Plaintiff brings this on behalf of herself and all other Santa Monica residential property owners for the purpose of obtaining an order declaring the Ordinance unconstitutional, enjoining Defendants from enforcing the Ordinance's unconstitutional provisions, and/or awarding any applicable damages.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS
### Short-Term Rentals Propel the Travel Industry and Interstate Commerce

13.    According to the United States Travel Association, "travel is one of the United States' largest industries and employers."

14.    The advent of the Internet, an instrumentality of interstate commerce, has revolutionized and boosted the travel industry.  Over the last few years, online marketplaces have allowed residential property owners, who may be out of town themselves for work or on vacation, to earn additional income by listing their privately-owned and otherwise vacant properties for short-term rental.  The online marketplace for short-term rentals brings together these listing owners with millions

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

of travelers seeking transient lodging from all over the United States.  Travelers can search, compare, and/or book fully furnished, privately-owned residential properties, including houses, guest houses, and condominiums, that listing owners rent to the public on a nightly, weekly, or monthly basis.  Two of the most popular online marketplaces for short-term rentals are Airbnb and HomeAway.

15.  **Airbnb**: Founded in or around 2008, Airbnb offers an online marketplace that facilitates transactions for rentals of residential properties on a short-term basis.  Airbnb has become the leading company within the online marketplace for short-term rentals.  According to its website, Airbnb has served over 60 million guests in over 34,000 cities and 190 countries.  Airbnb offers three different types of short-term rental listings:

a.  <u>Vacation rentals</u>: A rental of an entire house or apartment without the host being present in the unit during the stay.  This is the lodging option offered by hotels.  Plaintiff is informed and believes and thereupon alleges that vacation rentals account for approximately 64% of Airbnb's listings in the county of Los Angeles.

b.  <u>Home sharing</u>: A private room within a host's home while the host is present in other portions of the home during the stay.  Plaintiff is informed and believes and thereupon alleges that home sharing accounts for approximately 32% of Airbnb's listings in the county of Los Angeles.

c.  <u>Shared rooms</u>: The guest and host occupy the same living space.  Plaintiff is informed and believes and thereupon alleges that shared rooms account for approximately 4% of Airbnb's listings in the county of Los Angeles.

16.  **HomeAway**: Founded in or around 2005, HomeAway, unlike Airbnb, offers only vacation rentals, whereby a person lists an entire unit (e.g. house, guest house, or condominium) for rent for a given period of time.  The Texas-based company claims that its websites constitute the world's largest online marketplace for vacation rentals.  The websites for HomeAway include listings for over one

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

million individually-controlled and managed vacation rental properties in all 50 states and 190 countries across the world.

17.     According to a recent study, the vast majority of persons listing their properties for short-term rentals earn low, moderate, or middle incomes, and many have unsteady incomes.  The overwhelming majority of listing owners offer their properties for short-term rental when they leave town for work or vacation as a means of earning additional income from their privately-owned and otherwise vacant properties.  Indeed, a vacation rental, which constitutes the entirety of HomeAway's listings and a substantial portion of Airbnb's listings, is just that—a rental of an otherwise completely vacant house.  According to this study, even in the most expensive and desirable cities, the median host of a short-term rental earns, at most, a few thousand dollars of supplemental income a year from his otherwise vacant private property.

18.     As the number of listings and bookings on the online marketplace suggest, short-term rentals have become increasingly popular across the United States.  Third-party reports indicate that Airbnb bookings generated $4.5 billion in revenue in 2015, and that by 2018, Airbnb bookings will generate over $8 billion. The chart below shows the growth of the revenues generated from the short-term residential rental listings from Airbnb's marketplace alone.

| Year | Estimated | Forecast | % Change |
|------|-----------|----------|----------|
| 2010 | $133.3M | | |
| 2011 | $450.0M | | 238% |
| 2012 | $1.17B | | 159% |
| 2013 | $2.15B | | 84% |
| 2014 | $3.19B | | 49% |
| 2015 | $4.51B | | 41% |
| 2016 | | $6.10B | 35% |

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

| Year | Estimated | Forecast | % Change |
|:---:|:---:|:---:|:---:|
| 2017 | | $7.30B | 20% |
| 2018 | | $8.04B | 10% |

19.     The rapid growth of the marketplace for short-term rentals is a reflection of the benefits short-term residential rentals provide consumers and owners of private property as well as its impact on a national and global level.  On average, vacation rentals are at least 50% less expensive per square foot than hotels, and the savings is even greater for more popular destinations.  In addition to cheaper rooms, residential short-term rentals tend to offer amenities that are often not provided by hotels, such as access to a kitchen, a living room, a washer and dryer, and/or free parking.

20.     The nationwide impact the online marketplace for short-term rentals has had on interstate commerce exists on a macro level as well.  The increased availability of affordable short-term rentals for travelers has substantially decreased the cost of lodging, resulting in a corresponding substantial increase in travel across the country.  The increase in travel results in increased tourism and spending, thereby boosting local economies and interstate commerce.  As the marketplace for short-term rentals has grown, so have travel expenditures and travel-related employment.  According to the United States Travel Association, as of 2014, travel expenditures increased over 44% since 2004, the year before HomeAway was founded, and increased 29% since Airbnb began its unprecedented growth in 2009.  Since 2009, over 600,000 jobs have been added to the travel industry, a growth of over 8% in travel-related employment.  (U.S. Travel Assoc., Impact of Travel on State Economies, Feb. 5, 2016 (located at https://www.ustravel.org/research/impact-travel-state-economies-2015).)

///

21.     Airbnb alone claims to be responsible for $312 million in economic activity that would not otherwise exist but for its interstate online marketplace for short-term rentals.  This economic benefit extends across the country and to Los Angeles.  According to Airbnb, 37% of its guests would not have visited Los Angeles or would not have stayed as long in Los Angeles but for the benefits conferred by Airbnb and the online marketplace for short-term rentals.

**The Availability of Short-Term Rentals in Santa Monica is Essential for Interstate Commerce**

22.     A May 2014 Los Angeles Chamber of Commerce report found that the Santa Monica/Venice/Marina Del Rey area is Southern California's second most popular tourist destination, behind only Disneyland.  According to Defendants, each year Santa Monica hosts nearly eight (8) million tourists, more than half of whom are from outside of the United States.  Tourism generates $1.72 billion in revenue for Santa Monica's local economy as well as 13,700 jobs in Santa Monica.

23.     Plaintiff is informed and believes and thereupon alleges that there are 34 hotels consisting of 3,483 rooms in Santa Monica.  The 3,483 available hotel rooms are inadequate given the popularity and desirability of Santa Monica, Santa Monica's robust economy, and the local business boom.  This is evident from the hotel occupancy rates.  In June 2015, when Santa Monica enacted the Ordinance, the occupancy rate of Santa Monica hotels was 86.2%, compared to the 2015 nationwide occupancy rate of 65.6%, which was an all-time high in the United States.

24.     The extremely high demand for Santa Monica lodging results in extremely expensive hotel rooms.  Santa Monica was recently named the most expensive tourist destination in the State of California, significantly more expensive than even its closest competition.  The 34 Santa Monica hotels consist primarily of upscale luxury hotels, including the five-star Fairmont Miramar (rooms starting at $600+ per night), the Huntley Hotel ($700+/night), the Loews Santa Monica Beach

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

Hotel ($1,000+/night), the Shore Hotel ($500+/night), the Viceroy ($500+/night), the Oceana Beach Club Hotel ($500+/night), and the JW Marriot Le Merigot ($500/night) to name a few.  In 2014, the average daily rate (ADR) for a hotel room in Santa Monica was $335.61.  By comparison, the ADR for a hotel room in New York City is $276.08.

25.    The ultra-expensive hotel rooms in Santa Monica force travelers seeking lodging in Santa Monica to locate cheaper lodging alternatives.  The advent of the online marketplace for short-term rentals has filled that need and void for travelers.  The short-term vacation rentals in Santa Monica are substantially cheaper than the equivalent "vacation rentals" offered by Santa Monica hotels.  Plaintiff is informed and believes and thereupon alleges that prior to the City's enactment of the Ordinance, a short-term vacation rental in Santa Monica had an ADR of $205 compared to the $335.61 ADR for Santa Monica hotels.

### Pre-Ordinance Treatment of Short-Term Rentals in Santa Monica

26.    Defendants have claimed that short-term rentals were illegal in the City prior to enacting the Ordinance.  If such a law did exist, Defendants did not enforce it.  Instead, Defendants tacitly accepted the growing short-term rental marketplace and the resulting increase in tourism.  Prior to enacting the Ordinance, it was fairly common for Santa Monica property owners, who may be out of town themselves or reside out-of-state, to rent their otherwise vacant properties on a short-term basis to travelers looking for a cost-efficient lodging alternative to pricey Santa Monica hotels.  The preamble to the Ordinance, which is attached hereto as Exhibit 1, acknowledges this: "long before the advent of the [online marketplace for short-term rentals], home-sharing activities were already commonly undertaken throughout Santa Monica and throughout the United States."  (Ex. 1 at 2.)

27.    The ability to generate income from privately-owned residential property sitting vacant is inherent to the ownership of residential property.  The online marketplace for short-term rentals simply makes the process for owners to

list, and tourists to compare, choose, and rent, residential property easier and accessible on a nationwide scale.

28.    The relative ease with which a property owner can generate rental income from Santa Monica property is one of the primary reasons Santa Monica residential real estate is among the highest in Los Angeles and the country.  As of January 2016, the median rent for a one-bedroom apartment in Santa Monica was $3,490, significantly higher than its nearest competitor city, Venice ($2,820).  The astoundingly-high median rent for a one-bedroom Santa Monica apartment places Santa Monica tied with San Francisco and ahead of New York City ($3,280) in terms of most expensive rental markets in the United States.  Coupling the high demand for rental properties in Santa Monica with the high rental pricing makes owning residential real estate in Santa Monica particularly valuable.

### Defendants Enacted the Ordinance Amid the Increased Competition Santa Monica Hotels Were Facing from Short-Term Rentals

29.    The availability of cost-efficient short-term residential rentals has always presented competition for Santa Monica hotels.  For each traveler choosing to lodge at a short-term residential rental over a pricey Santa Monica hotel, Santa Monica hotels lose potential business.  This negatively impacts hotel revenue and the TOTs collected by the City.  But it was not until the online marketplace made vacation rentals in Santa Monica *too* popular that Defendants decided to act.

30.    As a direct result of the online marketplace affording travelers with more lodging options at cost-efficient prices, hotels have experienced increased competition.  Plaintiff is informed and believes and thereupon alleges that prior to the City's enactment of the Ordinance, Santa Monica was one of the most popular cities on Airbnb's website, representing the highest-searched city, the city with the most short-term listings, and the city with the second-highest revenue generated from short-term rental bookings in Los Angeles.  Plaintiff is informed and believes and thereupon alleges that when Defendants enacted the Ordinance, there were at

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

least 1,700 Santa Monica listings on Airbnb's website.

31.    According to a report relied upon and/or cited by Defendants in enacting the Ordinance, 87% of the millions of dollars in revenue generated by Santa Monica short-term rentals on Airbnb's website is derived from vacation rentals, the same lodging option offered by hotels.  This report estimated that 81.5% of Airbnb's bookings are shifted from away from hotels to Airbnb.  And, of course, 100% of the revenue generated by Santa Monica short-term rentals on HomeAway's vacation-based websites are derived from vacation rentals.

32.    Santa Monica faced the threat that these lost opportunities to generate hotel revenue would continue to increase as the popularity of the online marketplace continued to grow.  According to Defendants, the number of travelers that chose to lodge at places other than a Santa Monica hotel increased every year for at least the three years prior to the City passing the Ordinance.  By 2014, nearly one out of every three overnight visitors in Santa Monica did not lodge at a Santa Monica hotel.

33.    As travelers increasingly steered away from pricey Santa Monica hotels in favor of more affordable short-term residential rentals, Santa Monica hotels began losing business from other would-be-occupants, negatively impacting revenue generated by the hotels.  Plaintiff is informed and believes and thereupon alleges that in enacting the Ordinance, Defendants relied upon findings from a Boston University study[1] showing that the growth of the online marketplace for residential short-term rentals has had a statistically significant negative impact on hotel revenue.  Across the nation, the increase in competition city-localized hotels receive from the interstate marketplace for short-term rentals, the study concludes, has

---

[1]    Zervas, Georgios, "The Rise of the Sharing Economy: Estimating the Impact of Airbnb on the Hotel Industry."

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

impacted hotel revenue through decreased occupancy rates, hotel room prices, and/or Revenue Per Available Room (RevPAR)[2]. The availability of short-term residential rentals as an inexpensive lodging alternative also impacts hotel "pricing power," the ability of hotels to raise prices during peak times, such as when a festival, event, or large conference is in the area.

34.     According to the study, the more popular the area, the more of a negative impact the online marketplace for short-term rentals has on the hotel industry. In cities with more than 1,000 available rooms on Airbnb's website, as was the case with Santa Monica prior to the enactment of the Ordinance, hotel revenue is negatively impacted by 8.3%. A 10% increase in Airbnb supply results in a 0.35% negative impact on hotel room revenue. The negative impact on hotel room revenue is a reflection of travelers choosing short-term residential lodging over a hotel room.

35.     The Boston University study relied upon by Defendants also concluded that the negative impact short-term residential rentals have on hotel revenue trickles down to municipalities who correspondingly receive a decrease in TOTs from hotel revenue. Pursuant to the City's Municipal Code, Santa Monica receives fourteen percent (14%) TOT from hotel revenue and collects the TOTs on a monthly basis. S.M. Mun. Code § 6.68.020. Defendants rely heavily on the substantial revenues the City receives from the 14% TOTs it collects from the ultra-luxurious and pricey hotels in Santa Monica. In 2014, the City received $45.5 million in TOTs.

///

---

[2]     RevPAR, the standard performance metric in the hotel industry, measures the health of a single hotel, group of hotels, or a hotel market by incorporating revenue, occupancy percentage, and ADR. RevPAR is calculated by dividing total guestroom revenue by the total room count and the number of days in the period being measured.

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

36.     In an effort to steer travelers back to more expensive Santa Monica hotels and to prevent interstate competition from negatively impacting hotel revenue and the revenue the City receives from TOTs, Defendants enacted an ordinance that prohibits residential vacation rentals in Santa Monica, effectively eliminates the online marketplace for residential vacation rentals in Santa Monica, and requires transient Santa Monica travelers to stay in Santa Monica-based hotels.

### Santa Monica's "Short-Term Rental" Prohibition Ordinance

37.     The United States Conference of Mayors found that regulations of short-term rentals that go too far can have detrimental effects to the travel and tourism industries as well as the national economy and local economies.  This is exactly what Defendants have done.

38.     On or about May 12, 2015, the City Council voted to pass the Ordinance strictly limiting the ability to engage in the interstate business of short-term rentals to Santa Monica-based businesses.  The Ordinance went into effect on or about June 15, 2015.

39.     Santa Monica's "Short-Term Rental" prohibition is located in Section 6.20.010 *et seq.* of the Santa Monica Municipal Code, which can be found at http://www.qcode.us/codes/santamonica.  A copy of the Ordinance is also attached hereto as Exhibit 1.

40.     Section 6.20.030 entitled "Prohibitions" provides as follows: "No person, including any hosting platform operator, shall undertake, maintain, authorize, aid, facilitate or advertise any home-sharing activity that does not comply with Section 6.20.020 of this Code or any vacation rental activity."  S.M. Mun. Code § 6.20.030.  Thus, the Ordinance contains: (1) a complete ban on "vacation rentals;" (2) a partial ban on "home sharing;" and (3) a ban on advertising short-term rentals.

///

///

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

41.   **Complete Ban on Vacation Rentals**: By its express terms, the Ordinance prohibits all persons, except Santa Monica hotels, from engaging in "vacation rentals."   A "vacation rental" is defined as the rental of any residential unit to any person for his or her "exclusive transient use of thirty consecutive days or less."   S.M. Mun. Code § 6.20.010(c).   The Ordinance exempts Santa Monica-based hotels from the complete ban on "vacation rentals."   Id.   A Santa Monica property owner cannot even rent out his or her residential property while on vacation or a work trip as a means of earning some additional income while his or her privately-owned property sits vacant.   The Ordinance's complete ban on vacation rentals prevents a Santa Monica property owner from engaging in such commerce.

42.   **Partial Ban on Home Sharing**: While Santa Monica property owners who do not reside in their privately-owned Santa Monica properties are not permitted to engage in *any* short-term rentals of their properties, the Ordinance contains an exception that allows only Santa Monica residents who permanently reside in their properties to engage in short-term rentals in the form of "home sharing."   "Home sharing" is defined as the rental of any unit to any person for a period of 30 days or less during which the listing owner "lives on-site."   S.M. Mun. Code § 6.20.010(a).   By permitting only owners who simultaneously reside in the unit to engage in short-term rentals, the Ordinance discriminates against Santa Monica property owners who do not reside in Santa Monica in favor of Santa Monica residents.   For example, a New York resident who owns property in Santa Monica would never be permitted to utilize his property for short-term rentals because, as a New York resident, he would never qualify for the home sharing exception.   Instead, to engage in home sharing, a person must be a Santa Monica resident.

///

///

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

43.     Prior to utilizing the home sharing exception, the listing owner must obtain and possess a City-issued business license, which is available only to residents of Santa Monica.     S.M. Mun. Code § 6.20.020(a)(2).     Under the Ordinance, a TOT of 14% of the total amount paid for the room rental is imposed in connection with any home sharing activity.  S.M. Mun. Code § 6.20.020(a)(3).

44.     **<u>Prohibition Against Advertising Short-Term Rentals</u>**:   The Ordinance not only prohibits engaging in transactions for short-term rentals, but also prohibits utilizing the Internet, the interstate marketplace for short-term rentals, or any other forum to list, facilitate, or advertise short-term rentals.  By its express terms, the Ordinance prohibits listing owners from utilizing "any housing platform" to "aid, facilitate or advertise" any vacation rental or any other short-term rental that does not satisfy the home sharing exception.  S.M. Mun. Code § 6.20.030.  A "housing platform" is broadly defined as "[a] marketplace in whatever form or format which facilitates the home-sharing or vacation rental, through advertising, match-making or any other means, using any medium of facilitation, and from which the operator of the hosting platform derives revenues, including booking fees or advertising revenues, from providing or maintaining the marketplace."  S.M. Mun. Code § 6.20.010(b).  This definition not only includes Airbnb, HomeAway, and other companies engaged in the interstate business of providing an online marketplace for short-term rentals and facilitating interstate transactions between owners and travelers, but also includes any other business engaged in connecting listing owners with travelers, such as a newspaper.

45.     Due to the Ordinance's prohibition on advertising and/or utilizing the online marketplace for short-term rentals, Santa Monica property owners, even those who do not reside in Santa Monica, cannot use the online marketplace to engage in interstate transactions with travelers from across the country and the world.  The Ordinance purports to apply this ban even if the advertisement originates entirely outside of Santa Monica and is directed towards a locale outside of Santa Monica.

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

For example, under the Ordinance, a person located in New York cannot place an advertisement of a Santa Monica vacation rental on the Internet.  Nor can a person located in New York advertise a Santa Monica vacation rental in a Florida newspaper in the hopes of attracting a person planning on vacationing in California.

46.     The Ordinance also prohibits online marketplaces from accepting any listing or advertising of a vacation rental.  S.M. Mun. Code § 6.20.030.  Thus, under the Ordinance, HomeAway, an out-of-state business whose online marketplace is limited to vacation rentals, is prohibited from conducting *any* business in Santa Monica.  In addition to completely eliminating the presence of HomeAway's online marketplace for short-term rentals in Santa Monica, the Ordinance also has a drastic effect on Airbnb's online marketplace.  Defendants, in enacting the Ordinance, estimated that the complete ban on vacation rentals would slash Santa Monica Airbnb listings from 1,700 listings to 300 listings.  Plaintiff is informed and believes and thereupon alleges that due to the passing of the Ordinance, Airbnb and HomeAway will not permit persons to list vacation rentals of a Santa Monica property on their websites.

47.     The only type of short-term rental advertising permitted by the Ordinance is for authorized home sharing, the requirements for which a non-Santa Monica resident can never satisfy.  In the event that a Santa Monica resident advertises his or her property for home sharing in the newspaper, the newspaper advertising the short-term rental would be required to collect TOTs and remit them to the City on behalf of its advertiser.  Indeed, section 6.20.050 entitled "Hosting Platform Responsibilities" requires "housing platforms" to "be responsible for collecting all applicable TOTs and remitting the same to the City."  S.M. Mun. Code § 6.20.050.

48.     **Violations**: Violations of the Ordinance are subject to criminal fines of up to $500, administrative penalties, and/or imprisonment for six months.  S.M. Mun. Code § 6.20.100.  Since passing the Ordinance, Defendants have dedicated

substantial money and effort to its enforcement.  Plaintiff is informed and believes and thereupon alleges that Defendants have budgeted $410,000 to employ three (3) persons to ensure enforcement of the Ordinance during the first year of enactment. Upon enacting the Ordinance, Defendants estimated that they would collect fines totaling approximately $85,000 in just the first year of enforcement.

### The Ordinance Was Enacted to Promote Local Economic Interests

49.    The Ordinance has the effect of increasing the revenues the City receives from TOTs.  Defendants were not shy in acknowledging that the purpose of passing the Ordinance was to promote local economic interests.    Plaintiff is informed and believes and thereupon alleges that in enacting the Ordinance, Defendants cited the increased revenue from TOTs as a benefit.

50.    Even the stated purposes of the Ordinance are local economic protectionist purposes.  The preamble states that the Ordinance, as a whole, serves two purposes: "preserving [Santa Monica's] housing stock and preserving the quality and character of its existing single and multi-family residential neighborhoods."    According to Defendants, preserving housing stock and the "character and charm" of local residential neighborhoods is necessary to allow "Santa Monica's prosperity" "to continue to flourish."  The preamble provides in relevant part as follows:

> Santa Monica's primary housing goals include preserving its housing stock and preserving the quality and character of its existing single and multi-family residential neighborhoods. Santa Monica's prosperity has always been fueled by the area's many attractive features including its cohesive and active residential neighborhoods and the diverse population which resides therein.  In order to continue to flourish, the City must preserve its available housing stock and the character and charm which result, in part, from cultural, ethnic, and economic diversity of its resident population…. The City must also preserve its unique sense of community which derives, in large part, from residents' active participation in civic affairs, including local government, cultural events, and educational endeavors.

(Ex. 1 at 1.)

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

51.   Defendants expressly found the complete ban on vacation rentals was necessary to prevent foreign travelers from accessing residential neighborhoods. Such unabashed discrimination against foreigners and travelers, according to Defendants, would "sometimes" help "preserve the quality and character of [Santa Monica's] residential neighborhoods."   Specifically, the preamble states that vacation rentals "are detrimental to the community's welfare…because occupants of such vacation rentals, when not hosted, do not have any connections to the Santa Monica community and to the residential neighborhoods in which they are visiting." The "presence of such visitors within the City's residential neighborhoods can sometimes disrupt the quietude and residential character of the neighborhoods and adversely impact the community."  (Ex. 1 at 2.)

52.   Defendants justified the home sharing exception by citing two reasons. First, Defendants found that allowing Santa Monica residents to engage in home sharing was acceptable because "resident hosts are present to introduce their guests to the City's neighborhoods."   Second, Defendants found that "home-sharing activities are relatively very small in number, when compared to the number of persons utilizing vacation rentals."  (Ex. 1 at 2.)  In other words, what separates vacation rentals (which inherently provide competition for Santa Monica hotels) from home sharing activities (which do not provide competition for Santa Monica hotels), according to Defendants, are the following: (1) vacation rentals introduce foreign strangers into residential neighborhoods which "sometimes" could be potentially "detrimental" to the local community; and (2) the popularity of vacation rentals negatively impacts TOT revenue.

**PLAINTIFF'S EXPERIENCES**

53.   Plaintiff Arlene Rosenblatt has owned residential property in Santa Monica for approximately 20 years.  Her property, located less than three blocks from the beach in Santa Monica, has been in her family for approximately 55 years.

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

The property consists of three units.  Located on the front of the property is a two-bedroom, two-bathroom house, in which Plaintiff Rosenblatt and her husband reside and have resided for the past 20 years.  The back of the property consists of two apartments—a one-bedroom apartment and a studio apartment.  Both apartments are and have been occupied by rent-controlled tenants on month-to-month leases.

54.     Starting approximately two years prior to the City's enactment of the Ordinance, Plaintiff Rosenblatt saw an opportunity to utilize the online marketplace for short-term rentals as a means of generating some needed additional income from her house.  When she and her husband traveled on vacation, Plaintiff Rosenblatt would list her entire and otherwise vacant two-bedroom house for rent on Airbnb's website.   The house started being listed for $99 per night.  As she continued receiving stellar reviews and her house became more desirable as a lodging option for Santa Monica tourists and travelers, Plaintiff Rosenblatt gradually increased the nightly rate to $350 for the two-bedroom house.  Thus, instead of booking two Santa Monica hotel rooms at an ADR of $335 each ($670 total), a family of four could rent Plaintiff Rosenblatt's house for $350 total, or $175 per bedroom.  This visiting family of four would also receive a living room, a dining room, a kitchen, and a washer/dryer, and still be less than three blocks from the beach, all while saving nearly $1,500 over the course of the average 4.5 night stay for a visitor in Santa Monica.

55.     Since Defendants passed the Ordinance, Plaintiff Rosenblatt has not been able to list for rent or rent out her house as a vacation rental or any other type of short-term rental.  Plaintiff Rosenblatt has not been able to generate the income she once was able to generate from her privately-owned house while she and her husband were on vacation.  When Defendants passed the Ordinance, Plaintiff Rosenblatt was forced to stop listing for rent and/or renting out her house as a vacation rental while she and her husband traveled or at any other time.  Plaintiff Rosenblatt could no longer utilize the online marketplace for short-term rentals,

ESENSTEIN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

1  Airbnb's website, or any other "hosting platform" to generate the income that she

2  was once able to inherently generate from her vacant house while she was on

3  vacation or otherwise out of town.

4

5  ## CLASS ACTION DEFINITION AND ALLEGATIONS

6  56.   Plaintiff brings this action pursuant to Rule 23(a), (b)(1), (b)(2), and

7  (b)(3) of the Federal Rules of Civil Procedure on behalf of herself, and as a class

8  action on behalf of the following class ("the Class"):

9       All owners of residential property in the City of Santa

10      Monica.

11  57.   **Numerosity—Fed. R. Civ. P. 23(a)(1).**   Although Plaintiff does not

12  know the exact number of members in the Class, Plaintiff is informed and believes

13  and on that basis alleges that due to the number of residential properties in Santa

14  Monica and the number of units that have been listed for short-term rentals in Santa

15  Monica, the members of the Class are sufficiently numerous in number, likely in the

16  tens of thousands, that joinder of all class members is impracticable.

17  58.   **Existence of common questions of fact and/or law—Fed. R. Civ. P.**

18  **23(a)(2).**  Numerous questions of law and fact are common to the Class including,

19  without limitation, the following:

20      a.   Whether the Ordinance is unconstitutional;

21      b.   Whether the Ordinance violates the Dormant Commerce Clause

22  of the United States Constitution;

23      c.   Whether the Ordinance facially discriminates against non-

24  residents of Santa Monica in favor of residents of Santa Monica;

25      d.   Whether the Ordinance has the effect of discriminating against

26  non-residents of Santa Monica in favor of residents of Santa Monica;

27      e.   Whether the Ordinance facially burdens interstate commerce;

28      f.   Whether the Ordinance has the effect of burdening interstate

21

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

1  commerce;

2           g.     Whether the Ordinance was enacted for local economic
3  protectionist purposes;

4           h.     Whether the Ordinance is necessary to achieve an important
5  local purpose;

6           i.     Whether increasing TOTs and the City's revenues is an
7  important local purpose;

8           j.     Whether "preserving housing stock" to allow "Santa Monica's
9  prosperity….to continue to flourish" is an important local purpose;

10          k.     Whether "preserving the character and charm" of local
11  residential neighborhoods to allow "Santa Monica's prosperity….to continue to
12  flourish" is an important local purpose;

13          l.     Whether the Ordinance's prohibition on short-term rentals
14  constitutes a taking under the Fifth Amendment of the United States Constitution;

15          m.     Whether the Ordinance's prohibition on short-term rentals
16  amounts to a limitation on the use of privately-owned property;

17          n.     Whether the Ordinance's limitations on the use of privately-
18  owned property affect residential property market value;

19          o.     Whether Defendants substantially caused the enactment of the
20  Ordinance; and

21          p.     Whether Defendants were acting under the color of any state or
22  local law in enacting the Ordinance.

23      59.  **Typicality—Fed R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of
24  the claims of the Class in that all members of the Class have identical claims
25  challenging the constitutionality of the Ordinance.

26      60.  **Adequacy—Fed. R. Civ. P. 23(a)(4).**  Plaintiff will fairly and
27  adequately represent the interests of the Class in that Plaintiff is typical of absent
28  class members and seeks to vigorously litigate the claims of the Class.  Furthermore,

1   Plaintiff has retained competent counsel experienced in class action litigation.

2   Plaintiff's counsel will fairly and adequately protect the interests of the Class.

3       61.    **Inconsistent and/or incompatible adjudications—Fed. R. Civ. P.**

4   **23(b)(1).**  Prosecution of separate actions by individual class members would create

5   the risk of inconsistent or varying adjudications concerning the validity and/or

6   constitutionality of the Ordinance, establishing incompatible standards of conduct

7   for Defendants, absent class members, residents of the City of Santa Monica,

8   housing platforms, and any other persons subjected to the Ordinance.

9       62.    **Injunctive relief—Fed. R. Civ. P. 23(b)(2).**   Injunctive relief is

10   appropriate as to the Class as a whole because Defendants have acted or refused to

11   act on grounds generally applicable to the Class.

12       63.    **Predominance of common questions of fact and law and**

13   **superiority of class action litigation—Fed. R. Civ. P. 23(b)(3).**   Common

14   questions, including, but not limited to, those listed above in Paragraph 58, will

15   predominate this litigation.  This class action is superior to the alternatives, if any,

16   for the fair and efficient adjudication of this controversy.  The relief sought per

17   individual class member is small given the burden and expense of individual

18   prosecution of the potentially extensive litigation necessitated to challenge the

19   constitutionality of the Ordinance.  Furthermore, it would be virtually impossible for

20   the class members to seek redress on an individual basis.  Even if the class members

21   themselves could afford such individual litigation, the court system could not.

22       64.    Individual litigation of the legal and factual issues raised by the conduct

23   of Defendants and the passing of the Ordinance would increase delay and expense to

24   all parties and to the court system.  The class action device presents far fewer

25   management difficulties and provides the benefits of a single, uniform adjudication,

26   economies of scale and comprehensive supervision by a single court.  Given the

27   similar nature of the class members' claims and the law applicable thereto, the Court

28   and the parties will easily be able to manage a class action.

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

# FIRST CLAIM FOR RELIEF

## DORMANT COMMERCE CLAUSE

### (Discrimination Against Interstate Commerce)

### (Against All Defendants)

65.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

66.     Santa Monica's Ordinance discriminates against interstate commerce in violation of the Commerce Clause, Art. I, § 8, cl. 3 of the Constitution of the United States, for the following non-exclusive reasons:

a.      The Ordinance prohibits all interstate and intrastate competition for vacation rentals.  The Ordinance's complete ban on vacation rentals limits the right to engage in the business of vacation rentals in the City and to advertise vacation rentals on the Internet strictly to Santa Monica hotels.  The Ordinance ensures that Santa Monica hotels will receive 100% of all vacation rental lodging from out-of-state residents, effectively prohibiting all existing and future interstate and intrastate competition for transient lodging.

b.      The Ordinance prohibits all interstate and intrastate competition for home sharing and limits the right to engage in the business of home sharing in the City and to advertise home sharing on the Internet strictly to Santa Monica hotels and residents.  Non-Santa Monica residents, including out-of-state businesses, are prohibited from engaging in the business of short-term rentals even though a means for non-Santa Monica residents to engage in such interstate commerce and business exists.

c.      Out-of-state residents and businesses cannot obtain a business license to engage in short-term rentals.  The Ordinance limits the right to obtain a business license to engage in and advertise vacation rentals strictly to Santa Monica-based hotels and limits the right to receive a business license for home sharing strictly to Santa Monica hotels and residents.

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

d.     The Ordinance prohibits companies engaged in interstate commerce, such as Airbnb, HomeAway, and Santa Monica property owners residing out-of-state, from conducting business in the City.

e.     The Ordinance prohibits use of an otherwise available interstate online marketplace for short-term rentals.

f.     The Ordinance treats interstate travelers as unfriendly aliens and prevents them from being able to associate with and assimilate into local communities.

g.     The Ordinance was enacted for the stated purpose of ensuring local residents benefit from the preservation of local neighborhoods.

67.    The Ordinance's discriminatory provisions are not necessary to achieve an important local purpose.  Any reason(s) for including the discrimination in the Ordinance pale in comparison to the discriminatory and burdensome affect that they place on interstate commerce.

68.    Plaintiff and the Class are therefore entitled to declaratory judgment that the Ordinance's discriminatory provisions are unconstitutional under the Commerce Clause.

69.    Plaintiff and the Class have suffered, and will continue to suffer, irreparable injury if Defendants are permitted to continue enforcing the Ordinance. Plaintiff and members of the Class are thus entitled to a preliminary and permanent injunction prohibiting Defendants from enforcing the Ordinance.

70.    Pursuant to 42 U.S.C. § 1988, Plaintiff and the Class are entitled to costs and attorneys' fees, as well as interest.

///

///

///

///

///

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

**SECOND CLAIM FOR RELIEF**

**DORMANT COMMERCE CLAUSE**

**(Excessive Burden on Interstate Commerce)**

**(Against All Defendants)**

71.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

72.     Santa Monica's Ordinance unduly, substantially, and excessively burdens interstate commerce in violation of the Commerce Clause, Art. I, § 8, cl. 3 of the Constitution of the United States, for the following non-exclusive reasons:

        a.     The Ordinance prohibits use of an otherwise available interstate online marketplace for short-term rentals and prohibits all persons subject to the Ordinance from advertising vacation rentals on the online marketplace.

        b.     The Ordinance restricts the ability of companies that promote, further, and facilitate interstate commerce, such as Airbnb and HomeAway, from engaging in business in the City.

        c.     The Ordinance prohibits, limits, restricts, impedes, and/or diminishes free trade and interstate competition for lodging in the City.

        d.     The Ordinance limits the right to engage in the business of vacation rentals strictly to Santa Monica hotels.  This ensures that local Santa Monica hotels will receive 100% of all short-term lodging from out-of-state residents, effectively prohibiting all existing and future interstate and intrastate competition for transient lodging.

        e.     The Ordinance limits the right to receive a business license for short-term rentals strictly to Santa Monica hotels and residents.

        f.     The Ordinance increases the costs of short-term lodging in Santa Monica by limiting and/or restricting supply to Santa Monica hotels and prohibiting, limiting, and/or restricting cheaper and relatively inexpensive alternatives for short-term lodging.  By denying affordable means of transient lodging in the City and

1  limiting the availability of Santa Monica short-term lodging opportunities for

2  travelers and other out-of-staters, the Ordinance restricts, limits, and/or impedes

3  interstate travel.

4          g.     By making travel lodging in Santa Monica less affordable, the

5  Ordinance reduces tourism and other interstate activities within the City.

6          h.     The Ordinance treats interstate travelers as unfriendly aliens and

7  prevents them from being able to associate with and assimilate into local

8  communities.

9          i.     The Ordinance was enacted for the stated purpose of ensuring

10  local residents benefit from preservation of local neighborhoods.

11       73.     The Ordinance's burdens on interstate commerce are not necessary to

12  achieve an important local purpose.  Any reason(s) for including the burdens

13  presented by the Ordinance pale in comparison to the burdensome effect that they

14  place on interstate commerce.

15       74.     Plaintiff and the Class are therefore entitled to declaratory judgment

16  that the Ordinance's burdensome provisions are unconstitutional under the

17  Commerce Clause.

18       75.     Plaintiff and the Class have suffered, and will continue to suffer,

19  irreparable injury if Defendants are permitted to continue enforcing the Ordinance.

20  Plaintiff and members of the Class are thus entitled to a preliminary and permanent

21  injunction prohibiting Defendants from enforcing the Ordinance.

22       76.     Pursuant to 42 U.S.C. § 1988, Plaintiff and the Class are entitled to

23  costs and attorneys' fees, as well as interest.

24  ///

25  ///

26  ///

27  ///

28  ///

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

# THIRD CLAIM FOR RELIEF

# INVERSE CONDEMNATION

### (Against All Defendants)

77.   Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

78.   Plaintiff and all class members own and have an interest in their privately-owned properties located in the City.  Plaintiff and all class members have an interest in real property that has been reduced by the City's enactment of the Ordinance.

79.   Defendants substantially participated in approving, implementing, drafting, passing, enacting, and/or enforcing the Ordinance.

80.   Vacation rentals are a very popular and lucrative portion of the online rental marketplace.  Vacation rentals are especially popular in the tourist-driven City of Santa Monica.  Vacation rentals in Santa Monica have been common throughout the City's history.  Santa Monica residential property is one of the most expensive in the country, due in large part to its attractiveness to potential renters and tourists.

81.   The Ordinance prohibits Plaintiff and class members from entering into a very popular and lucrative portion of the rental marketplace, vacation rentals.  The Ordinance constitutes a prohibition, limitation, and/or restriction on the use of the properties owned by Plaintiff and class members.

82.   By eliminating a very popular, valuable, and lucrative economic use of private properties in the City, the City's enactment of the Ordinance has directly, substantially, and proximately caused all residential properties in the City to necessarily suffer a reduction or depreciation in market value.

83.   Plaintiff and the Class are entitled to damages in the amount of the reduction of the property value as a result of the City's enactment of the Ordinance.

84.   Pursuant to California Code of Civil Procedure section 1036, Plaintiff and the Class are entitled to costs and attorneys' fees, as well as interest.

# FOURTH CLAIM FOR RELIEF

## THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

### (Against All Defendants)

85.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

86.    Plaintiff and all class members own and have an interest in their privately-owned properties located in the City.  Plaintiff and all class members have an interest in real property that has been reduced by the City's enactment of the Ordinance.

87.    Defendants substantially participated in approving, implementing, drafting, passing, enacting, and/or enforcing the Ordinance.

88.    Vacation rentals are a very popular and lucrative portion of the online rental marketplace.  Vacation rentals are especially popular in the tourist-driven City of Santa Monica.  Vacation rentals in Santa Monica have been common throughout the City's history.  Santa Monica residential property is one of the most expensive in the country, due in large part, to its attractiveness to potential renters and tourists.

89.    The Ordinance prohibits Plaintiff and class members from entering into a very popular and lucrative portion of the rental marketplace, vacation rentals.  The Ordinance constitutes a prohibition, limitation, and/or restriction on the use of the properties owned by Plaintiff and class members.

90.    By eliminating a very popular, valuable, and lucrative economic use of private properties in the City, the City's enactment of the Ordinance has directly, substantially, and proximately caused all residential properties in the City to necessarily suffer a reduction or depreciation in market value.

91.    Plaintiff and the Class are entitled to declaratory judgment that the Ordinance constitutes an unconstitutional taking under the Fifth Amendment of the Constitution of the United States.

///

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

92.     Plaintiff and the Class have suffered, and will continue to suffer, irreparable injury if the Ordinance remains in effect and Defendants are permitted to continue enforcing the Ordinance.  Plaintiff and class members are thus entitled to a preliminary and permanent injunction prohibiting Defendants from enforcing the Ordinance.

93.     Pursuant to 42 U.S.C. § 1988, Plaintiff and the Class are entitled to costs and attorneys' fees, as well as interest.

## FIFTH CLAIM FOR RELIEF
## DECLARATORY RELIEF
### (28 U.S.C. § 2201, *et seq.*)
### (Against All Defendants)

94.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

95.     An actual controversy has arisen and now exists between Plaintiff and the members of the Class, on the one hand, and Defendants, on the other hand, concerning the constitutionality and validity of the Ordinance.  Plaintiff and the Class contend that the Ordnance is unconstitutional and invalid, while Defendants contend that the Ordinance is constitutional and valid.

96.     A judicial declaration is necessary and appropriate at this time, under the circumstances presented, so that Plaintiff, the members of the Class, and Defendants may ascertain their respective rights and duties with respect to the Ordinance.

///

///

///

///

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

### SIXTH CLAIM FOR RELIEF
### DEPRIVATION OF CONSTITUTIONAL RIGHTS
### (42 U.S.C. § 1983)
### (Against All Defendants)

97.   Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

98.   Defendants, in enacting and enforcing the Ordinance, were acting under the color of state law.

99.   The enactment of the Ordinance violates the rights of Plaintiff and the Class guaranteed by the Constitution of the United States, including the Commerce Clause and the Fifth Amendment.

100.   Plaintiff and the Class are entitled to declaratory judgment that the Ordinance constitutes an unconstitutional taking under the Fifth Amendment of the Constitution of the United States.

101.   Plaintiff and the Class have suffered, and will continue to suffer, irreparable injury if the Ordinance remains in effect and Defendants are permitted to continue enforcing the Ordinance.  Plaintiff and class members are thus entitled to a preliminary and permanent injunction prohibiting Defendants from enforcing the Ordinance.

102.   As a direct and proximate cause of Defendants' enactment of the Ordinance and deprivation of the constitutional rights of Plaintiff and the Class, Plaintiff and the Class have been damaged and suffered monetary damages in an amount to be established at trial.  Plaintiff and the Class are therefore entitled to all applicable damages, including all general, special, compensatory, consequential, and punitive damages.

103.   Pursuant to 42 U.S.C. § 1988, Plaintiff and the Class are entitled to costs and attorneys' fees, as well as interest.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.      For an order certifying the Class;

2.      For an order appointing Esensten Law as Class Counsel and Plaintiff as Class Representative;

3.      On an expedited basis, pursuant to Federal Rules of Civil Procedure Rule 57, for an order declaring that the Ordinance is unconstitutional, void, and invalid and enjoining Defendants from enforcing the Ordinance and its unconstitutional provisions;

4.      For declaratory relief and an order declaring that the Ordinance, including its short-term rental prohibition, is unconstitutional, void, and invalid;

5.      For a temporary restraining order, a preliminary injunction, and/or a permanent injunction enjoining Defendants from enforcing the Ordinance and its unconstitutional provisions;

6.      For an award of general damages according to proof;

7.      For an award of special damages according to proof;

8.      For an award of punitive damages according to proof

9.      For an order awarding Plaintiff and the Class pre- and post-judgment interest;

///

///

///

///

///

///

///

///

///

10.    For an order awarding Plaintiff and the Class their costs and expenses, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure section 1036, and any other applicable laws; and

11.    For all general, special, and equitable relief to which the Plaintiff and the Class are entitled by law.

DATED:  June 21, 2016                **ESENSTEN LAW**


By:  _____/s/ Jordan S. Esensten_____
          JORDAN S. ESENSTEN
Attorneys for Plaintiff Arlene Rosenblatt, on behalf of herself and all others similarly situated

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

3          Plaintiff hereby demands a trial by jury.

4

5   DATED:  June 21. 2016          **ESENSTEN LAW**

6

7                                        By: _____/s/ Jordan S. Esensten_____

8                                        JORDAN S. ESENSTEN
                                         Attorneys for Plaintiff Arlene Rosenblatt, on
9                                        behalf of herself and all others similarly
                                         situated

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ESENSTEN LAW
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025