MARSHA JONES MOUTRIE
City Attorney
JOSEPH LAWRENCE
Assistant City Attorney
JEANETTE SCHACHTNER (SBN 116671)
Deputy City Attorney
ISABEL BIRRUETA (SBN 223485)
Deputy City Attorney
1685 Main Street, Room 310
Santa Monica, California 90401
Telephone: (310) 458-8336
Facsimile:  (310) 395-6727
Joseph.Lawrence@SMGOV.NET
Jeanette.Schachtner@SMGOV.NET
Isabel.Birrueta@SMGOV.NET

Attorneys for Defendants
CITY OF SANTA MONICA,
THE CITY COUNCIL OF SANTA MONICA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLENE ROSENBLATT, an individual, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>THE CITY OF SANTA MONICA, a municipal corporation; and THE CITY COUNCIL OF THE CITY OF SANTA MONICA, its governing body,<br><br>                Defendants. | CASE NO.  **2:16-cv-04481-ODW-AGR**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:   September 19, 2016<br>Time:  1:30 p.m.<br>Courtroom:  11<br><br>Assigned to Honorable Otis D. Wright II<br><br><br>Pretrial Conference: Not Set<br>Trial Date: Not Set |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.   STATEMENT OF FACTS ............................................................................... 2

III.  GENERAL STANDARD FOR DISMISSAL .................................................. 5

IV.   PLAINTIFF LACKS STANDING TO PROSECUTE THIS ACTION ...................... 6

    A.    Plaintiff Does Not Have Article III Standing. ...................................... 7

    B.    Plaintiff's First And Second Claims Fail Because She Does Not Overcome Prudential Limitations Of Third Party Standing. ............................... 7

    C.    Plaintiff's First and Second Claims Do Not Fall Within The Zone of Interest Protected By the Dormant Commerce Clause. ...................................... 9

V.    THE CITY'S ORDINANCE DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE ................................................................................. 10

    A.    The Ordinance Does Not Facially Discriminate Against Interstate Commerce. ................................................................................. 11

    B.    The Ordinance Has No Discriminatory Effect Or Legally Relevant Burden On Interstate Commerce. ................................................. 11

VI.   PLAINTIFF'S THIRD AND FOURTH CLAIMS ALLEGED UNDER THE FIFTH AMENDMENT TAKINGS CLAUSE ARE PROCEDURALLY BARRED AND FAIL TO STATE A CLAIM. .......................................... 14

    A.    Plaintiff Failed To Exhaust Available State Compensation Remedies. ........... 15

    B.    The Third And Fourth Claims Fail To State A Claim for A Regulatory Taking Under *Penn Central*. ................................................ 16

        1.    Plaintiff's Takings Allegations Fail the *Penn Central* Tests. ............... 17

            a.    Economic Impact ................................................................ 17

            b.    Reasonable Investment-Backed Expectations ............................. 19

                (1)    There is no taking since the Ordinance allows Plaintiff to continue her historic use of her property ........................................................... 19

i

(2)     The City's regulatory regime and Plaintiff's admissions demonstrate she had no reasonable expectation in operating commercial vacation rentals at her residential property. ................................... 20

      c.     Character of Governmental Action ............................................ 21

C.     Plaintiff's Third and Fourth Claims Are Not Ripe. .......................................... 22

D.     The Third And Fourth Claims Are Barred By The Statute of Limitations. ................................................................. 22

E.     The Fourth Claim For Declaratory Relief Fails Because The Fifth Amendment Is A Compensation Remedy. ...................................... 23

VII.   PLAINTIFF'S FIFTH AND SIXTH CLAIMS CANNOT BE MAINTAINED AND MUST BE DISMISSED. ........................................................... 24

VIII.  PLAINTIFF'S CLAIMS AGAINST THE CITY COUNCIL MEMBERS SHOULD BE DISMISSED .......................................................... 25

IX.    CONCLUSION ........................................................................... 25

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS S**

# TABLE OF AUTHORITIES

Page

**Cases**

*Aamodt v. City of Norfork*, Ark.
682 F.3d 735 (8th Cir. 2012) ................................................. 17

*Allen v. Wright*
468 U.S. 737 (1984) ............................................................... 5

*Appolo Fuels, Inc v. United States*
381 F.3d 1338 (Fed. Cir. 2004) .............................................. 20

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................... 6

*Bogan v. Scott-Harri*
523 U.S. 44 (1998) ................................................................. 25

*Carson Harbor Village Ltd. v. City of Carson*
37 F.3d 468 (9th Cir. 1994) ................................................... 15

*Cassettari v. Nevada County*
824 F.2d 735 (9th Cir. 1987) ................................................. 15

*City of Claremont v. Kruse*
177 Cal.App.4th 1153 (2009) ................................................. 3

*City of Corona v. Naulls*
166 Cal.App.4th 418 (2008) ................................................... 3

*City of Los Angeles v. County of Kern*
581 F.3d 841 (9th Cir. 2009) .............................................. 9, 10

*City of Rancho Palos Verdes, Cal. v. Abrams*
544 U.S. 113 (2005) ............................................................... 24

*Concrete Pipe & Products, Inc. v. Construction Laborers Pension Trust*
508 U.S. 602 (1993) ............................................................... 18

*Construction Industry Association of Sonoma County v. City of Petaluma*
522 F.2d 897 (9th Cir. 1975) ................................................. 11

*County of Sonoma v. Superior Court*
190 Cal.App.4th 1312 (2010) ................................................. 22

*Euclid v. Ambler Co.*
272 U.S. 365 (1926) ............................................................... 3

*Ewing v. City of Carmel-By –The-Sea*
234 Cal.App.3d 1579 (1991) ......................................... 3, 16, 21

*Exxon Corp. v. Governor of Maryland*
437 U.S. 117 (1978) .......................................................... 10, 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

*First English Evangelical Lutheran Church v. County of Los Angeles*
    482 U.S. 304 (1987)........................................................................ 23

*Fors v. Lehman*
    741 F2.d 1130 (9th Cir. 1984) ......................................................... 6

*Gamble v. Eau Claire County*
    5 F.3d 285 (7th Cir. 1993)............................................................... 23

*Guggenheim v. City of Goleta*
    638 F. 3d 1111 (9th Cir. 2010) ....................................................... 20

*Hadacheck v. Sebastian*
    239 U.S. 394 (1915)......................................................................... 18

*Hensler v. City of Glendale*
    8 Cal.4th1 (1994) ...................................................................... 16, 22

*Hong Kong Supermarket* v. *Kizer*
    830 F.2d 1078 (9th Cir. 1987)........................................................... 8

*Hughes v. Oklahoma*
    441 U.S. 322 (1979)......................................................................... 10

*Individuals for Responsible Gov't, Inc. v. Washoe County*
    110 F.3d 699 (9th Cir. 1997) ....................................................... 9, 10

*Kolwalsi v. Tesmer*
    543 U.S. 125 (2004) ...................................................................... 8, 9

*Liberty Mutual Ins. Co. v. Brown*
    380 F.3d 793 (5th Cir. 2004) .......................................................... 23

*Lingle v. Chevron USA Inc.*
    544 U.S. 528 (2009)........................................................... 16, 17, 23

*Loretto v. Teleprompter Manhattan CATV Corp.*
    458 U.S. 419 (1982)........................................................................ 16

*Lucas v. South Carolina Coastal Council*
    505 U.S. 1003 (1992) ..................................................................... 16

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)...................................................................... 5, 7

*MacDonald, Sommer & Frates v. Yolo County*
    477 U.S. 340 (1986) ....................................................................... 22

*McMichael v. County of Napa*
    709 F.2d 1268 (9th Cir. 1983) .......................................................... 6

*Miller v. Board of Public Works*
    195 Cal.477 (1925) ........................................................................... 3

*Monterev v. Del Monte Dunes, Ltd.*
    526 U.S. 687 (1999)......................................................................... 24

iv

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

*Neumont v. Florida*
   610 F.3d 1249 (11th Cir. 2010) ........................................................... 17

*Norfolk Southern Corporation v. Oberly*
   822 F.2d 388 (3rd Cir. 1987) .......................................... 10, 11, 14

*Outdoor Media Grp. Inc. v. City of Beaumont*
   506 F.3d 895 (9th Cir. 2007) ............................................................... 6

*Palazzolo v. Rhode Island*
   533 U.S. 606 (2001) ............................................................................ 20

*Pascoag Reservoir & Dam v. Rhode Island*
   337 F.3d 87 (1st Cir. 2003) ................................................................. 23

*Penn Central Transp. Co. v. New York City*
   438 U.S. 104 (1978) ......................................................... 15, 17, 19, 21

*Pennsylvania Coal Co. v. Mahon*
   260 U.S. 393 (1922) ............................................................................ 19

*Pike v. Bruce Church, Inc.*
   397 U.S. 137 (1970) ............................................................................ 10

*Powers v. Ohio*
   499 U.S. 400 (1991) .............................................................................. 8

*Rith Energy v. United States*
   270 F. 3d 1347 (Fed. Cir. 2001) ........................................................ 18

*Rose Acre Farms, Inc. v. United States*
   373 F.3d 1177 (Fed. Cir. 2004) .......................................................... 17

*San Remo Hotel v. City & County of San Francisco*
   145 F.3d 1095 (9th Cir. 1998) ............................................................ 15

*San Remo Hotel, L. P. v. City and County of San Francisco ("San Remo I")*
   27 Cal. 4th 643 (2002) ........................................................................ 15

*San Remo Hotel, L.P. v. City and County of San Francisco ("San Remo II")*
   545 U. S. 323 (2005) ........................................................................... 16

*Santa Monica Food Not Bombs v. City of Santa Monica*
   450 F.3d 1022 (9th Cir. 2006) .............................................................. 2

*Siwinski v. Town of Ogden Dunes*
   949 N.E.2d 825 (Ind. 2011) ............................................................... 17

*Skelly Oil Co. v. Phillips Petroleum Co.*
   339 U.S. 667 (1950) ............................................................................ 24

*Supreme Court of Virginia v. Consumers Union of U. S.*
   446 U.S. 719 (1980) ............................................................................ 25

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*
   535 U.S. 302 (2002) ............................................................................ 20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

*United States v. Riverside Bayview Homes Inc.*
    474 U.S. 121 (1985)........................................................................... 23

*United States v. Riverside Bayview Homes, Inc.*
    474 U.S. 121 (1985)........................................................................... 18

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*
    454 U.S. 464 (1982)............................................................................. 5

*Village of Euclid v. Ambler Realty Co.*
    272 U.S. 365 (1926)........................................................................... 18

*Wilkins v. City of San Bernardino*
    29 Cal.2d 332 (1946) ........................................................................... 3

*William C. Haas v. City and County of San Francisco*
    605 F. 2d 1117 (9th Cir. 1979)......................................................... 18

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*
    473 U.S. 172 (1985)........................................................................... 15

*Wine and Spirits Retailers, Inc. v. Rhode Island*
    418 F.3d 36 (1st Cir. 2005) ................................................................. 9

**Statutes**

28 USC §2201 ...................................................................................... 24

42 U.S.C. § 1983 .................................................................................. 24

Gov. Code, §§ 65800-65912 .................................................................. 3

Government Code §65009(c)(1)(B)...................................................... 22

**Other Authorities**

Cal. Const., art. XI, § 7 .......................................................................... 3

Santa Monica Municipal Code
    Chapter 6.20 ....................................................................................... 4

Santa Monica Municipal Code section 6.20.010 .................................. 4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Arlene Rosenblatt ("Plaintiff"), a twenty-year City of Santa Monica ("City") residential property owner, seeks to invalidate a City Ordinance[1] that eased the City's longstanding prohibition of all short-term vacation rentals from being operated within its residential neighborhoods. Plaintiff, who admittedly wishes to engage in short-term vacation rentals, a commercial operation similar to that of a bed and breakfast, hotel or motel use, on her residential property, claims that the Ordinance effects a taking of her property rights in violation of the Fifth Amendment and that it violates the Commerce Clause.

Plaintiff is wrong on all fronts – factually and legally.  The Ordinance in question liberalized her ability to use her property as she wishes.  Contrary to her assertions, the Ordinance does not further resist her use of property.  Under prior and long standing City of Santa Monica law, Plaintiff was absolutely prevented from doing what she now claims to want to do.  That is no longer true.

Apart from getting facts wrong, Plaintiff is also misguided on the law.  Plaintiff simply has no standing to bring this lawsuit. She has suffered no harm and has no ability to raise a claim on behalf of unrelated third parties.  As a long-time and continuing City resident, she cannot represent the interests of third-parties who are non-residents and with whom she has no relationship with whatsoever.  Beyond the fatal standing defects, the Ordinance does not violate the commerce clause.  The Ordinance does not discriminate against interstate commerce.  It regulates even-handedly to effectuate legitimate local land use interests, namely local zoning restrictions upon residential districts.  Such a regulation, which aims to protect residential neighborhoods from unwanted commercial hotel-like activities, has been

---

[1] Ordinance No. 2484 (hereinafter "Ordinance") adopted by the City Council on May 12, 2015.  *See* City of Santa Monica's Request for Judicial Notice in Support of Motion to Dismiss ("City's RJN"), p. 007-014; *See* footnote 2 for reference to City's former and current Zoning Ordinance, which prohibit vacation rentals.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

the legitimate core function of state and local government zoning for the last century, and similar regulations have been unambiguously and repeatedly affirmed by federal courts against commerce clause challenges.

Plaintiff's takings and inverse condemnation claims border on the absurd.  As noted, the law in question expands Plaintiff's ability to use her property.  It is illogical to fault the government for taking private property, when the government acts to give (not restrict) more private property rights.  The Ordinance grants the Plaintiff rights to engage in home-sharing.  The law augmented her ability to generate income through short-term rentals, if that is what she wants to do.  This enhanced property benefit is anything but a governmental taking.  Instead of taking advantage of the Ordinance's benefit and applying for a home-sharing permit from the City, Plaintiff chose to come to this Court to seek relief that is plainly unavailing.  Unquestionably, this lawsuit should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

The City of Santa Monica ("Santa Monica" or the "City") is a vibrant beach community in southern California occupying a little more than eight square miles with a weekday population of approximately 300,000 that swells to 500,000 on many weekends. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025–26 (9th Cir. 2006).  One of the City's longstanding policies is the preservation of its housing stock and the quality and character of its existing single and multi-family residential neighborhoods.  City's RJN, Ex. A, p. 007. This policy is enshrined in numerous regulatory documents, including the City's General Plan, which specifically provides that the "highest priority of the community was the preservation of the existing character and scale of Santa Monica's neighborhoods."  City's RJN, Ex. B, pp. 024, 028.  Consistent with these policies, and like many other cities in the nation, Santa Monica prohibits vacation rentals from being operated within its

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

residential neighborhoods.[2]  City's RJN, Ex. C, pp. 062-78, 081; Ex. D, pp. 096-117; Ex E, pp. 150-170.  This prohibition has been in place since 1988. City's RJN.[3]

The reasons for this longstanding prohibition are clear.  Vacation rentals are essentially bread and breakfast or hotel/motel operations being conducted within a residential neighborhood, immediately adjacent to residential uses.  City's RJN, Ex. E, pp. 175-177; Ex. F, p. 194.  The conflict that arises from such disparate uses being immediately adjacent to each other is obvious.  As the Court noted in *Ewing v. City of Carmel-By The-Sea*, 234 Cal.App.3d 1579 (1991), the "'residential character' of a neighborhood is threatened when a significant number of homes . . . are occupied not by permanent residents but by a stream of tenants staying a weekend, a week, or even 29 days, . . . [as] such rentals undoubtedly affect the essential character of a neighborhood and the stability of a community."  *Id.* at 1591.  The presence of vacationers renting accommodations in residential neighborhoods "disrupt the quietude and residential character of the neighborhoods and adversely impact the community."  City's RJN, Ex. A, p. 008.

The City has consistently enforced its prohibition against vacation rentals.  For example, in 2011 the City issued two Administrative Citations and a Warning to property owners and/or tenants for operating vacation rentals without a business license and for violating the City's zoning regulations.  City's RJN, Ex. G, pp. 213-

---

[2] The City's Zoning Ordinance, periodically updated over the last 30 years, includes tables or lists for each residential district to identify the uses that are specifically permitted in each district. Under this permissive zoning scheme, if a use, such as vacation rentals, is not listed, the use is prohibited.  *City of Corona v. Naulls*, 166 Cal.App.4th 418 (2008); *City of Claremont v. Kruse*, 177 Cal.App.4th 1153 (2009).  The legislative record indisputably shows that vacation rentals have not been a permitted use in any zoning district since at least 1988. The City's current Zoning Ordinance (Ordinance No. 2486) was recently revised on June 14, 2016 to clarify certain provisions, but did not change the provisions prohibiting vacation rentals in residential districts.

[3] It is well settled that cities have broad authority to adopt zoning ordinances to protect the public health and general welfare of its residents.  *See* Cal. Const., art. XI, § 7; Ca. Gov. Code, §§ 65800-65912; *Euclid v. Ambler Co.*, 272 U.S. 365, 386-395 (1926); *Miller v. Board of Public Works,* 195 Cal. 477, 484-488 (1925).  Municipalities may establish strictly private residential districts as part of a general comprehensive zoning plan. *Wilkins v. City of San Bernardino,* 29 Cal.2d 332, 337-338 (1946).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

219.  Additionally, from July 2014 to February 2015, the City's Code Enforcement Division initiated 47 enforcement cases and issued 10 administrative citations to enforce City's zoning ordinance regulations. City's RJN, Ex. F, p. 196. Moreover, in 2010 the City Attorney's Office criminally prosecuted a case involving vacation rental violations.  City's RJN, Ex. H, pp. 225, 229.   Indeed, on April 29, 2015, the City opened an enforcement case against Plaintiff, Rosenblatt for operating her home as a vacation rental, in violation of the City's Zoning Ordinance. City's RJN, Ex. I, pp. 238-246. Ms. Rosenblatt paid a $650 fine as a result of this case.  *Id.*

Partially as a result of lobbying by community members who sought to create extra income with their residences, on May 12, 2015, the City Council adopted Ordinance No. 2484 (hereinafter "Ordinance," Codified at Santa Monica Municipal Code "SMMC" Chapter 6.20) which eased the City's longstanding vacation rental prohibition.  City's RJN, Ex. A, pp. 007-015.  The Ordinance differentiates between "Home-Sharing," defined as "residents host visitors in their homes, for compensation, for periods of thirty consecutive days or less, while at least one of the dwelling unit's primary residents lives on-site, in the dwelling unit, throughout the visitors' stay;" and "Vacation Rental," defined as rentals of residential property for 30 days or less whereby the resident(s) do not remain within their dwelling unit to host their guests. *See* SMMC 6.20.010.  The Ordinance continued to prohibit Vacation Rentals, but authorized Home-Sharing to occur within the City's residential districts, including at Plaintiff Rosenblatt's property.  City's RJN, Ex. L, p. 341 lines 24-28; p. 342 lines 1-2. (Councilmember Davis' motion to adopt the Ordinance and characterizing it as to "liberalize the rules" regulating vacation rentals.), City's RJN, Ex. L, p. 347 lines 25-26. (Mayor McKeown stating that by adopting the Ordinance "we have just now essentially made legal something that has never been legal before in Santa Monica.")

The Council drew the line at authorizing Home-Sharing because it found that:

….operation of vacation rentals, where residents rent-out-entire units to visitors and are not present during the visitors' stays are detrimental to the community welfare . . . , because occupants of

4

such vacation rentals, when not hosted, do not have any connections to the Santa Monica Community and to the residential neighborhoods in which they are visiting; and ...the presence of such visitors can sometimes disrupt the quietude and residential character of the neighborhoods and adversely impact the community…"

City's RJN, Ex. A, p. 008.

Additionally, the City Council recognized that unlike unhosted vacation rentals, "home-sharing does not create the same adverse impacts as unsupervised vacation rentals because, among other things, the resident hosts are present to introduce their guests to the City's neighborhoods and regulate their guests' behavior." *Id.* Shortly after the Ordinance was adopted, the City received complaints that Plaintiff Rosenblatt continued to operate an unlawful vacation rental at her Property and that she had not applied for a home-sharing permit. City's RJN, Ex. J, p. 254. The City issued a letter to Plaintiff Rosenblatt advising her of the Ordinance, and invited her to apply for a home-sharing permit. *Id.* Plaintiff Rosenblatt has not alleged she has applied for any such permit.

## III.   GENERAL STANDARD FOR DISMISSAL

FRCP Rule 12 (b)(1) permits a party to raise the defense of subject matter jurisdiction by motion. Standing is "an essential and unchanging part of the case-or-controversy requirement under Article III. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) ("*Lujan*"). Courts determine whether plaintiff has standing by the specific common law, statutory or constitutional claims that plaintiff presents. *Allen v. Wright,* 468 U.S. 737, 752 (1984). Plaintiffs that do not have Article III standing may not litigate in federal court. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475-476 (1982).

The question of whether plaintiff has standing involves both constitutional and prudential limitations. *McMichael v. County of Napa,* 709 F.2d 1268, 1269 (9th Cir.

5

1983) ("*McMichael*").  The constitutional limitations of Article III contain three components: (1) an "injury in fact" which is concrete and not conjectural; (2) a causal connection between the injury and defendant's conduct or omission; and (3) a likelihood that the injury will be redressed by a favorable court decision.  *Lujan, 504 U.S. at* 560-561.  Prudential limitations require plaintiff to "(1) assert his own rights, rather than rely on the rights or interests of third parties; (2) allege an injury that is more than a generalized grievance; and (3) allege an interest that is arguably in the zone of interests protected and regulated by the statute or constitutional guarantee in question."[4]  *McMichael*, 709 F.2d at 1270.  "Failure to meet any of these constitutional or prudential requirements defeats standing."  *Id. citing Fors v. Lehman* (9th Cir. 1984) 741 F2.d 1130, 1132.

Additionally, FRCP Rule 12(b)(6) allows a defendant to seek dismissal for failure to state a claim upon which relief can be granted.  "When ruling on a motion to dismiss, [the court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Grp. Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007).  The court accepts factual allegations in the complaint as true and construes the pleadings in light most favorable to the plaintiff.  *Id.* at 900.  However, the court is not required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint.  *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009) ("While conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

## IV.    PLAINTIFF LACKS STANDING TO PROSECUTE THIS ACTION

---

[4]While Supreme Court recently moved away from treating the "zone of interest" test as a subset of "prudential standing," the question to be asked remains whether this class of person(s)/plaintiff(s) has a right to sue under the particularly substantive law or statute at issue. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.__, ___, 134 S. Ct. 1377, 1386-87 (2014).

## A.     Plaintiff Does Not Have Article III Standing.

Plaintiff alleges that she engaged in the business of vacation rentals approximately two years prior to the City's enactment of the Ordinance and that since the City adopted the Ordinance Plaintiff has been unable engage in the business of short-term vacation rentals.  Complaint, ¶ 55.  If Plaintiff engaged in vacation rentals prior to the adoption of the challenged Ordinance, she did so illegally. Vacation rentals have been banned since at least 1988 by the City's zoning code.[5]  The challenged ordinance allows Plaintiff to do what she previously could not do at all, hardly the definition of "harm" under Article III.  *Lujan,* 504 U.S. at 560-561. Moreover, despite Plaintiff's assessment to the contrary, the City enforced the City's prohibition against short-term vacation rentals long before the City adopted the Ordinance.[6]  City's RJN, Exs. F, p. 196; G, pp. 213-219.  Accordingly, Plaintiff fails to show a causal connection between the City's enactment of the Ordinance and Plaintiff's alleged injury or alleged injuries to other residential property owners.

Similarly, Plaintiff fails to demonstrate that there is a likelihood that her alleged injury, or alleged injuries of third parties, will be redressed by a favorable Court decision. If the Court enjoins the City from enforcing the Ordinance, the City's Zoning Ordinance would nevertheless completely bar Plaintiff and other residential property owners from engaging in the business of short-term vacation rentals.

## B.     Plaintiff's First And Second Claims Fail Because She Does Not Overcome Prudential Limitations Of Third Party Standing.

Even if Plaintiff satisfied the Article III "case or controversy" requirement, she cannot show she has a close relationship to the third parties she seeks to represent so as to have common interests and that it would be difficult or impossible for such

---

[5] Indeed, even if the City did not enforce the Ordinance, the existing Zoning Ordinance (Ordinance No. 2486) would nonetheless bar short-term vacation rentals.   City's RJN, Ex. E, p. 150-170.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

parties to assert their rights themselves.  *Powers v. Ohio,* 499 U.S. 400, 410-411 (1991) ("*Powers*").

Here, Plaintiff does not, and cannot, show she has a close relationship with all owners of residential property in the City or that they have consistent interests. *Kolwalsi v. Tesmer,* 543 U.S. 125, 131-32 (2004) ("*Kolwalsi*").  Indeed she has no relationship with other property owners whatsoever.  Additionally, Plaintiff has failed to and cannot show the Court that she would be as effective a proponent of the third party rights as they would be.  (*Hong Kong Supermarket* v. *Kizer*, 830 F.2d 1078, 1082 (9th Cir. 1987) ("*Kizer*").  In *Kizer*, the supermarket vendor claimed that it and its customers were economically harmed by the administration of a state food program. The court held the Supermarket lacked prudential standing because its interests were not "inextricably intertwined" with its customers and it would not be an effective a proponent of their rights.  In ruling, the court noted that the vendor's request to enjoin the state program was more likely in conflict with, rather than consistent with the third party interests, thereby undermining the vendor's claim to be a suitable representative of its customer's rights. *Id. at 1082.*

As was true in *Kizer*, Plaintiff's goals likely conflict with those of many other City residential property owners.  Indeed, during the April 28, 2015 City Council meeting in which the City Council considered adoption of the Ordinance, dozens of members of the public spoke in favor and against the Ordinance for distinct reasons. City's RJN, Exs. K, p. 261; L, pp. 277-331.  At least in Santa Monica, significant numbers of residential property owners believe the Ordinance is consistent with their interests to preserve the character of the residential districts in which they live and that the Ordinance mitigates adverse impacts caused by transient lodging.   Others may support the Ordinance because they can now legally engage in the business of home-sharing.  *Id.*

Finally, the City's residential property owners are fully able to assert their own rights.  *Kolwalsi,* 543 U.S. at 131-32; *Wine and Spirits Retailers, Inc. v. Rhode Island,*

8

1   418 F.3d 36 (1st Cir. 2005).

2        **C.**    **Plaintiff's First and Second Claims Do Not Fall Within The Zone of**

3               **Interest Protected By the Dormant Commerce Clause.**

4        Plaintiff's First and Second Claims also fail to show facts that her claims "fall

5   within the zone of interests protected by or regulated by the statutory provision or

6   constitutional guarantee in question." *Individuals for Responsible Gov't, Inc. v.*

7   *Washoe County*, 110 F.3d 699, 702-03 (9th Cir. 1997) ("*Washoe County*"). The

8   primary purpose of the "dormant" Commerce Clause "is to limit the powers of States

9   to erect barriers against interstate trade." *Id.* It prohibits states from "advanc[ing] their

10   own commercial interests by curtailing the movement of articles of commerce, either

11   into or out of state. *City of Los Angeles v. County of Kern*, 581 F.3d 841, 847 (9th Cir.

12   2009) ("*Kern*"). Financial injury, standing alone, does not implicate the zone of

13   interests protected by the dormant Commerce Clause. That financial injury must

14   somehow be tied to a barrier imposed on interstate commerce." *Id.* at 848.

15        In *Kern* and *Washoe County*, plaintiffs' claims under the Commerce Clause

16   failed because those plaintiffs could not allege barriers imposed on interstate

17   commerce. *See Kern*, *supra,* at 847-848; *Washoe County*, *supra,* 110 F.3d at 703-704.

18        Plaintiff's Commerce Clause claims suffer the same fatal defect. Here, too, the

19   primary federal interests Plaintiff seeks to assert under her dormant Commerce Clause

20   claims are its protections against state regulations that discriminate against or

21   excessively burden interstate commerce. But, as Plaintiff admits and the Ordinance

22   makes clear on its face, the City's prohibition against vacation rentals operates

23   evenhandedly as to intrastate and interstate commerce.[7] Because the City's land use

24   choice to ban all vacation rentals does not discriminate between in-state and out-of-

25

26   ─────────────────────

27   [7] Plaintiff admits that the "Ordinance prohibits all interstate and intrastate competition for vacation rentals." (Complaint, ¶ 66.a; see also ¶72.a), As discussed in Section V, below, the absence of any

28   legally relevant burden on interstate commerce dooms Plaintiff's Commerce Clause claims as a matter of law.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1  state competitors, Plaintiff cannot allege a legally relevant burden imposed by the

2  Ordinance on interstate commerce within the protections afforded by the dormant

3  Commerce Clause.  *Norfolk Southern Corporation v. Oberly,* 822 F.2d 388, 402, 406-

4  407 (3rd Cir. 1987) ("*Norfolk*") (ban on all product transfer facilities does not burden

5  interstate commerce).

6        In addition, as discussed in Section IVA, Plaintiff cannot show that her alleged

7  financial injury, or the alleged injuries of third parties, was caused by the Ordinance

8  itself.  Because no protected interest under the Commerce Clause was burdened by the

9  adoption of the Ordinance, Plaintiff's alleged harm does not fall within the zone of

10  interests protected by the Commerce Clause.  *See Kern*, *supra,* 581 F.3d at 847-848;

11  *Washoe County*, *supra,* 110 F.3d at 703-704.

12  **V.      THE CITY'S ORDINANCE DOES NOT VIOLATE THE DORMANT**

13          **COMMERCE CLAUSE**

14        Plaintiff's First and Second Claims allege that the Ordinance violates the

15  Commerce Clause (1) by discriminating against and (2) by unduly burdening,

16  interstate commerce. To determine whether the Ordinance violates the "dormant"

17  Commerce Clause, Courts first consider whether the Ordinance facially discriminates

18  against out-of-state commerce in favor of in-state interests (*Hughes v. Oklahoma,* 441

19  U.S. 322, 337 (1979)), or has a discriminatory effect on interstate commerce. *Exxon*

20  *Corp. v. Governor of Maryland,* 437 U.S. 117, 125 (1978) ("*Exxon*").  If the

21  Ordinance does not discriminate against interstate commerce, but "…regulates even-

22  handedly to effectuate a local legitimate local public interest, and its effects on

23  interstate commerce are only incidental, it will be upheld unless the burden imposed

24  on such commerce is clearly excessive in relation to the putative local benefits." *Pike*

25  *v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970).

26        However, no claim may be maintained against evenhanded regulation under the

27  dormant Commerce Clause in the absence of a legally relevant, i.e. discriminatory,

28  burden on interstate commerce. A state's "choice between competing land uses…does

10

not implicate the Commerce Clause…so long as the state's choice does not discriminate between in-state and out-of-state competitors. *Norfolk*, *supra*, 822 F.2d at 402. "It is well settled that a state regulation validly based on the police power does not impermissibly burden interstate commerce where the regulations neither discriminates against interstate commerce nor operates to disrupt its required uniformity." *Construction Industry Association of Sonoma County v. City of Petaluma*, 522 F.2d 897, 909 (9th Cir. 1975).

The City's regulation of short term rentals – including both the ban on Vacation Rentals and the authorization to engage in Home-Sharing under the Ordinance – is nondiscriminatory and falls evenly on all in-state and out-of-state persons and businesses. Therefore, as a matter of law, Plaintiff cannot state a claim under the "dormant" Commerce Clause, and her First and Second Claims should be dismissed.

## A. The Ordinance Does Not Facially Discriminate Against Interstate Commerce.

The Ordinance does not facially discriminate against interstate commerce because it does not treat out-of-state interests differently in favor of in-state interests. *Norfolk*, *supra* at 400. Rather, the Ordinance is facially neutral; it prohibits all persons from operating vacation rentals as defined by the Ordinance. Similarly, the Ordinance grants all persons and businesses, whether they live or are located in-state or out-of-state, an exception to the City's complete ban of vacation rentals to permit "home-sharing" provided the Ordinance's conditions are met. City's RJN, Ex. A p. 011. It is irrelevant that some of the dwelling units may be owned or operated by out-state residents or business. The conditions that the Ordinance attaches to "home-sharing" apply equally to all persons and businesses whether they live or are located in-state or out-of-state. *Id.*

Because the Ordinance makes no distinction between in-state and out-of-state residents and businesses, it does not facially discriminate against interstate commerce.

## B. The Ordinance Has No Discriminatory Effect Or Legally Relevant

11

1

**Burden On Interstate Commerce.**

2     Plaintiff failed to, and cannot, demonstrate that the Ordinance effectively

3  discriminates against interstate commerce.  The Ordinance does not favor in-state

4  residents and businesses and/or Santa Monica hotels to the detriment of out-of-state

5  residents and businesses.  Plaintiff's conclusory and overblown allegation that the

6  "Ordinance ensures that [City] hotels will receive 100% of all vacation rental lodging

7  from out-of-state residents, effectively prohibiting all existing and future interstate and

8  intrastate competition for transient lodging" is unfounded.  Complaint, ¶66.a; *see also*

9  ¶72.d.  There is no reason to assume that the business of "home-sharing" will not

10  compete with existing hotels and other transient lodging establishments.  Indeed,

11  Plaintiff alleges that the "City of Santa Monica is one of the most popular and

12  desirable destinations in the Country" (Complaint ¶ 10) and that "home-sharing"

13  already accounts for approximately 32 percent of Airbnb's listings in the County of

14  Los Angeles.  Complaint, ¶ 15.b.

15     Moreover, in *Exxon*, like here, plaintiffs argued that because the initial burden

16  of a Maryland divestiture statute prohibiting petroleum producers and refiners from

17  operating retail service stations in the state fell solely on interstate companies, the

18  statute had the effect of discriminating against interstate commerce at the retail level.

19  *Exxon*, 437 U.S. at 125.  The Supreme Court rejected plaintiffs' argument, finding

20  instead that the statute did not discriminate against interstate commerce at retail level

21  because the statute did not create barriers against interstate independent dealers who

22  competed directly with Maryland independent dealers.  *Id*. at 126.  The *Exxon* court

23  noted that the "[Commerce] Clause protects the interstate market and not "a particular

24  structure or methods of operation in the retail market" or "particular interstate firms,

25  from prohibitive or burdensome regulations."  *Id. at 127.*

26     Like the state regulation in *Exxon*, even if the burden of complying with the

27  Ordinance's conditions fell solely on interstate companies and out-of-state residents,

28  which it does not, the Ordinance does not discriminate against, and thereby burden

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

interstate commerce.  The Ordinance does not distinguish between in-state and out-of-state interests; it does not place barriers against interstate companies or out-of-state residents from competing with intra-state or interstate owners of City hotels or any other lodging establishment.  *Cf. Exxon* at 126.  Rather than limiting competition with City hotels, the Ordinance increases competition by legalizing home-sharing.

Plaintiff's assertion that the "Ordinance prohibits companies engaged in interstate commerce, such as Airbnb, HomeAway, and Santa Monica property owners residing-out-of-state, from conducting business in the City" is also without merit. Complaint, ¶ 66.d; *cf.* ¶72b.  Nothing in the Ordinance prohibits any of these companies or out-of-state residents from engaging in the business of home-sharing to compete with City hotels so long as they meet the Ordinance's conditions.  Some companies or out-of-state residents may choose not to engage in the business of "home-sharing" but there is no reason to assume that other companies or out-of-state residents will not replace these parties.  In this regard, the fact that some out-of-state companies may abstain from engaging in the business of "home-sharing" does not constitute an impermissible burden on interstate commerce.  "Interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some businesses to shift from one interstate supplier to another." *Exxon*, *supra* at 127.

Contrary to Plaintiff's allegations in paragraphs 43, 66.c, and 72.e of the Complaint, nothing in the Ordinance prohibits out-of-state residents or businesses from obtaining a business license to engage in "home-sharing," a form of short-term rentals.  A person or business may obtain a business license for "home-sharing" so long as at least one of the dwelling unit's primary residents "lives on-site." *Id.*  An out-of-state resident, for example, that wishes to compete with City hotels, or other lodging establishments, can obtain a business license for "home-sharing" through an arrangement with his or her tenant, the primary resident that lives on-site.  In this example, the out-of-state resident is also not prohibited from advertising his or her

13

1  "home-sharing" rental on the Internet.

2       Ultimately, as in *Norfolk*, *supra* at 406-407, the absence of a discriminatory

3  burden is dispositive of this case. In *Norfolk*, the Court upheld a state coastal zone

4  requirement banning a new mode of coal export transfer without applying the *Pike* test

5  because the record revealed "no legally relevant burden on interstate commerce that

6  could be excessive." *Id.* at 406.  Finding that the ban was a nondiscriminatory burden

7  that must be shouldered by any coal transporter, regardless of state affiliation, the

8  Court emphasized "the case law makes clear that the Commerce Clause is concerned

9  with protectionism and the need for uniformity and…legislation will not be

10  invalidated under the *Pike* test in the absence of a discriminatory burden on interstate

11  commerce." *Ibid.*

12       The administrative record clearly demonstrates that the City did not adopt the

13  Ordinance for the economic protection of Santa Monica hotels and residents.  Rather,

14  the City adopted the Ordinance for the purpose of implementing its Land Use and

15  Circulation Element of the General Plan policies to protect residential neighborhoods

16  from the disrupting effects of commercial activities.   City's RJN, Exs. A, pp. 007-

17  010; B, pp. 023-24, 028.  It did so by reaffirming the Zoning Ordinance's complete

18  ban on vacation rentals while granting City residential homeowners and tenants

19  additional rights in home-sharing. In doing so evenhandedly, the Ordinance does not

20  discriminate against interstate commerce or otherwise create a legally relevant burden

21  on interstate commerce.  Because the local regulation here is validly based on the

22  police power and does not discriminate against interstate commerce, Plaintiff's

23  Commerce Clause claims must fail. *Construction Industry Association of Sonoma*

24  *County v. City of Petaluma*, *supra*.

25  ///

26  ///

27  ///

28  **VI.    PLAINTIFF'S THIRD AND FOURTH CLAIMS ALLEGED UNDER**

**THE FIFTH AMENDMENT TAKINGS CLAUSE ARE PROCEDURALLY BARRED AND FAIL TO STATE A CLAIM**.

Plaintiff's takings claims essentially allege that she suffered a reduction in the value of her residential property as a result of the Ordinance's prohibition on vacation rentals. Complaint, ¶ 82. Thus, Plaintiff has attempted to assert a regulatory taking claim. Such a claim must pass muster under *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978)  ("*Penn Central*"). As demonstrated below, Plaintiff's takings claims are procedurally barred and cannot be maintained under *Penn Central* and its considerable progeny. [8]

### A.    Plaintiff Failed To Exhaust Available State Compensation Remedies.

Plaintiff's complaint is fatally defective.  She has failed to allege that she exhausted available state compensation remedies.  "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause [of the Fifth Amendment] until it has used the procedure and been denied just compensation." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 195 (1985).

The Ninth Circuit has repeatedly held that California adequately provides for the simultaneous consideration of inverse condemnation claims under state law and the Fifth Amendment of U.S. Constitution. *San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1102 (9th Cir. 1998); *Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 475 (9th Cir. 1994); *Cassettari v. Nevada County,* 824 F.2d 735, 738 (9th Cir. 1987). The California Supreme Court has concluded the same. *San Remo Hotel, L. P. v. City and County of San Francisco* ("*San Remo I*"), 27 Cal. 4th 643, 664 (2002)  (California and federal takings clauses construed congruently); *Hensler v. City*

---

[8] Although separately labeled for Inverse Condemnation and for Relief under the Fifth Amendment Takings Clause, the allegations in paragraphs 78-82 of the Third Claim and paragraphs 86-90 of the Fourth Claim are verbatim.  The only difference is in the relief sought – the Third Claim seeks damages in ¶83 and the Fourth seeks declaratory relief in ¶91.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1    *of Glendale,* 8 Cal.4th 1, 9, fn. 4 (1994).

2         Most recently, in *San Remo Hotel, L.P. v. City and County of San Francisco*

3    ("*San Remo II*"), 545 U. S. 323 (2005), the United States Supreme Court left no doubt

4    that California provides an adequate state compensation remedy for federal takings

5    claims.  There, a unanimous Court held petitioners' federal taking claims were barred

6    under the preclusion doctrine after the California Supreme Court rejected them in *San*

7    *Remo I. San Remo II*, 545 U.S. at 346.

8         Because Plaintiff never sought, much less was denied, just compensation in the

9    California state courts, her federal claims under the Fifth Amendment takings clause

10   are barred and must be dismissed.

11        **B.    The Third And Fourth Claims Fail To State A Claim for A**

12             **Regulatory Taking Under *Penn Central*.**

13        In *Lingle v. Chevron USA Inc.,* 544 U.S. 528 (2009) the U.S. Supreme Court

14   jettisoned the "substantially advance" prong of takings jurisprudence and clarified that

15   "outside two relatively narrow categories of regulatory action generally deemed *per se*

16   takings" – permanent physical invasion (*Loretto v. Teleprompter Manhattan CATV*

17   *Corp.,* 458 U.S. 419 (1982)) and denial of all economically beneficial use of property

18   (*Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992)) – "and the special

19   context of land-use exactions," regulatory takings challenges are governed by the

20   multi-pronged standards set forth in *Penn Central*.  *Lingle*, *supra*, 544 U.S. at 538.

21   Because the Ordinance does not result in a *per se* taking of property, or involve a

22   land-use exaction, *Penn Central* governs Plaintiff's takings claims.

23        It is noteworthy, however, that courts have upheld local prohibitions of vacation

24   rentals in residential neighborhoods as a valid exercise of the police power to regulate

25   land uses. Most notably, in *Ewing v. City of Carmel-By-The-Sea*, *supra*, plaintiffs

26   alleged that a Carmel ordinance which prohibited vacation rentals from operating

27   within residential properties constituted a regulatory taking under the U.S.

28   Constitution.  In a pre-*Lingle* decision, the Court of Appeal affirmed Carmel's

16

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

vacation rental prohibition, deciding that Carmel's ordinance substantially advanced legitimate state interests in maintaining the character of residential neighborhoods and did not deny economically viable use of land under *Penn Central*. *Id.* at 1588-1593.[9] The Court's analysis and findings in *Ewing* are consistent with the appropriate application of the multifactor test identified in *Penn Central*.

### 1. Plaintiff's Takings Allegations Fail the *Penn Central* Tests.

To determine whether a partial regulatory taking has occurred under *Penn Central's* multifactor test, courts must examine government action for (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct (reasonable) investment-backed expectations; and (3) the character of the government action. *Penn Central*, 438 U.S. at 124.

### a. Economic Impact

In *Lingle*, the Supreme Court explained that "the common touchstone" of "regulatory takings jurisprudence" is to identify regulatory actions that are "functionally equivalent" to the classic physical occupation or appropriation of land. *Lingle*, 544 U.S. at 539-540. Given this touchstone, it follows that anything less than a severe or extreme loss cannot be the functional equivalent of physical occupation or appropriation of land. *See Rose Acre Farms, Inc. v. United States,* 373 F.3d 1177 1197 (Fed. Cir. 2004) (Judicial insistence on "severe economic deprivation" stems from the nature of a regulatory taking claim that regulatory interference is so severe as to be tantamount to condemnation or appropriation). *See also United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 126 (1985) (land use regulation may

---

[9] Numerous other courts throughout the Country have similarly upheld local vacation rental prohibitions. *See. e.g., Aamodt v. City of Norfork*, Ark., 682 F.3d 735 (8th Cir. 2012) (upholding Norfork, Arkansas's short-term rental ban); *Neumont v. Florida,* 610 F.3d 1249 (11th Cir. 2010) (upholding Monroe County, Florida's short-term rental restrictions); *Siwinski v. Town of Ogden Dunes,* 949 N.E.2d 825 (Ind. 2011) (affirming Ogden Dunes, Indiana's prohibition against vacation rentals).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1    "under extreme circumstances" be a taking).

2         As a corollary, mere diminution in property value cannot by itself establish a

3    taking.  Courts have generally permitted a regulation or a regulatory action to cause a

4    substantial amount of diminution in value without finding a taking under *Penn*

5    *Central.  Concrete Pipe & Products, Inc. v. Construction Laborers Pension Trust*, 508

6    U.S. 602, 645 (1993), citing *Village of Euclid v. Ambler Realty Co*., 272 U.S. 365, 384

7    (1926) (approximately 75% diminution in value upheld) and *Hadacheck v. Sebastian,*

8    239 U.S. 394, 405 (1915) (92.5% diminution upheld). *See also William C. Haas v.*

9    *City and County of San Francisco,* 605 F. 2d 1117 (9th Cir. 1979) (95% diminution in

10   value upheld); see also *Rith Energy v. United States,* 270 F. 3d 1347 (Fed. Cir. 2001)

11   (91% diminution in value upheld).

12        As a threshold matter, the Ordinance has caused no cognizable economic

13   impact on Plaintiff under *Penn Central*.  This is because the City's Zoning Ordinance

14   in effect at all times before the adoption of the Ordinance completely prohibited

15   vacation rentals in residential districts.  *See* City's RJN, Ex. D pp. 096-117.  Indeed,

16   these land use prohibitions against vacation rentals were enforced before Plaintiff

17   even considered using her home for vacation rentals. *See* City's RJN, Ex. F, p. 196;

18   Ex. G, 213-219; Complaint, ¶54 (Plaintiff first considered using her home for vacation

19   rentals approximately two years before the enactment of the Ordinance). Thus,

20   contrary to Plaintiff's claims, the challenged Ordinance has the effect of expanding

21   uses allowed within the City's residential zones districts.  It allows home-sharing.

22   Because the effect of the Ordinance is to expand allowable uses while continuing the

23   pre-existing prohibition against vacation rentals, it cannot have caused the loss of

24   vacation rentals as a use or any corresponding diminution in property value.

25        Furthermore, even if this were not true, as *Ewing*, *supra*, recognizes "[a] zoning

26   ordinance does not constitute a taking simply because it narrows a property owner's

27   options."  *Id.* at 1592.  Quoting Justice Holmes in *Pennsylvania Coal Co. v. Mahon,)*

28   260 U.S. 393, 413 (1922, "[g]overnment hardly could go on if to some extent values

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

incident to property could not be diminished without paying for every such change in the general law." *Ibid.* Here, as in *Ewing* and in countless other decisions, the Ordinance leaves Plaintiff with several economically viable uses of her property. *Ibid.* The Ordinance does not interfere with her continued occupancy of her personal residence, or her rental of her two back apartment units. And, even if the pre-existing restriction on vacation rentals is ignored, the economic impact of the Ordinance is too minimal to give rise to a taking. *Ibid.*

### b.   Reasonable Investment-Backed Expectations

Plaintiff's complaint makes clear she had no actual or objectively reasonable investment-backed expectation in expanding the historic residential use of her property to include commercial vacation rentals that have only recently emerged with the "sharing economy."

### (1)   There is no taking since the Ordinance allows Plaintiff to continue her historic use of her property.

Plaintiff admits that her residential property has been in her family for approximately 55 years, and that she has owned it for the past 20 years, during which time she has resided in the front unit and rented the back two units. Complaint ¶53. She does not claim that the Ordinance interferes with any of these historic primary uses of her property. Instead, the complaint is focused only on her inability to engage in short-term vacation rentals, a commercial activity she first considered a possibility in 2013, two years before the enactment of the Ordinance. Complaint ¶38, ¶54.

In *Penn Central*, the Supreme Court found no taking primarily because New York City's historic landmarks preservation laws allowed the landowner to continue to pursue its current and historic use of Grand Central Terminal. 438 U.S. at 136. Here, too, because the Ordinance neither interferes with Plaintiff's continued historic, primary residential use of her property, nor conflicts with her primary expectation concerning her current use of her land, there can be no taking.

19

**(2)      The City's regulatory regime and Plaintiff's admissions demonstrate she had no reasonable expectation in operating commercial vacation rentals at her residential property.**

For purposes of the *Penn Central* analysis, courts typically look to existing laws and regulations governing use of the parcel at the time it was acquired to help determine the owner's reasonable investment backed expectations.  *Palazzolo v. Rhode Island,* 533 U.S. 606, 633 (2001), (O'Conner, J. concurring). Justice O'Conner's concurrence was embraced by the Supreme Court in *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 335-336  (2002) and has been applied in post-*Palazzolo* decisions.  *See, e.g.*, *Guggenheim v. City of Goleta,* 638 F. 3d 1111 (9th Cir. 2010); *Appolo Fuels, Inc. v. United States,* 381 F.3d 1338, 1348-1349 (Fed. Cir. 2004).

As set forth above, the laws governing residential property in Santa Monica that shape the reasonableness of Plaintiff's expectations precluded the commercial use of residential property for vacation rentals when she acquired her property.[10]  *See* City's RJN, Ex. D, pp. 109-110.  Plaintiff's attempt to plead around this fact by alleging in paragraph 80 of her complaint that "[v]acation rentals in Santa Monica have been common throughout the City's history" is belied by other allegations of her complaint and the Ordinance itself, which she attached as an exhibit to the complaint.

First, Plaintiff admits that the short-term rental of residential properties and the "housing platforms" that facilitate them, and that are the subject of regulation by the Ordinance, did not exist until 2006 (Complaint, ¶16) and 2008 (Complaint, ¶15). Thus, engaging in these activities could not have been within Plaintiff's actual

---

[10] Plaintiff's property is located in OP-2 Ocean Park Low Multiple Residential District, which like other residential districts, does not permit vacation rentals under the City's zoning regulations.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

expectation when she acquired her property decades ago.[11]   Second, Plaintiff misquotes the Ordinance, substituting "vacation rentals" for "home-sharing" in an attempt to allege the former have been common in the City's history.  (Complaint, ¶26) The relevant finding in the Ordinance actually states: "Whereas, long before the advent of the sharing economy, home-sharing activities were already commonly undertaken throughout Santa Monica and throughout the United States."  City's RJN, Ex. A pp. 009.  The Ordinance findings distinguish home-sharing from vacation rentals by identifying the severe adverse impacts caused by unsupervised vacation rentals, and make clear why the City decided to prohibit unsupervised vacation rentals rather than the "longstanding practice of 'home-sharing'".  *Ibid.*

Nothing in the complaint supports the contention that engaging in vacation rentals was within Plaintiff's reasonable or actual expectation.

### c.   Character of Governmental Action

The application of this last *Penn Central* factor too weighs in favor of the City. In *Penn Central*, the Court explained that takings "may be more readily found when the interference with property can be characterized as a physical invasion by government… than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."  438 U.S. at 124.  The Ordinance falls into the latter category – it is a public program adjusting the benefits and burdens of public life to protect the character and quietude of existing residential neighborhoods through land use regulation.  *Cf. Ewing*, *supra*, 234 Cal.App.3d at 1589-1591 with City's findings in the Ordinance. The fact that the challenged government action is this case is clearly non-invasive supports dismissal of Plaintiff's taking claims.

---

[11] Plaintiff's admission that she never even considered engaging in short-term rentals at her property until 2013 in paragraph 54 of the complaint itself undermines any claim that she had any investment-backed expectation in conducting such activities.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

## C.     Plaintiff's Third and Fourth Claims Are Not Ripe.

The first ripeness prong of *Williamson County*– the finality requirement – is based on the principle that "a court cannot determine whether a regulation has gone too far unless it knows how far the regulation goes." *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986).  Plaintiff has not pled compliance with the finality requirement. While she admits that she has a two-bedroom home that could accommodate home-sharing allowed under the Ordinance, she does not allege that she ever applied for a business license to home-share at her property or home-shared. Without doing so, this Court cannot determine the economic impact of the ordinance and, thus, how far the regulation goes.

## D.     The Third And Fourth Claims Are Barred By The Statute of Limitations.

In *Hensler v. City of Glendale*, *supra,* the California Supreme Court dismissed an inverse condemnation action alleging the taking of property resulting from the adoption and application of a subdivision ordinance because it was not brought within the applicable limitations period. The Court held that, because the constitutional validity of an ordinance, as it affects the plaintiff's property, must be litigated in any inverse condemnation action which does not allege that a taking has already been judicially established, actions for compensation for a regulatory taking must be joined with and filed at the same times as a state law-based cause of action to invalidate an ordinance or its application to a plaintiff's property. 8 Cal 4th 7, 24-25.

Here, plaintiff's takings claim is based on the enactment of the Ordinance. Complaint ¶¶ 7, 11, 38. California Government Code §65009(c)(1)(B) establishes a 90-day statute of limitations for actions "[t]o attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance."  Where a party brings a facial challenge to a zoning ordinance, the limitations period begins to run on the date the ordinance becomes effective.  *County of Sonoma v. Superior Court*, 190 Cal.App.4th 1312, 1323-1324 (2010).  Because Plaintiff alleges that the

22

Ordinance went into effect June 15, 2015 (Complaint ¶38), Plaintiffs' claim accrued by no later than mid-September 2015, and the 90-day statute of limitations on a cause of action for inverse condemnation ran long ago.

As in *Hensler*, Plaintiff's failure to challenge the enactment of the Ordinance in state court bars her takings claims under the statute of limitations. Because Plaintiff is now time-barred from doing so, she cannot cure this defect and she has forfeited her federal taking claim. (*Gamble v. Eau Claire County,* 5 F.3d 285 (7th Cir. 1993), "a claimant cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open. An unexcused failure to exhaust forfeits the plaintiff's rights..." *Id.* at 286. *See also Pascoag Reservoir & Dam v. Rhode Island*, 337 F.3d 87, 96 (1st Cir. 2003); *Liberty Mutual Ins. Co. v. Brown,* 380 F.3d 793 (5th Cir. 2004).

### E.   The Fourth Claim For Declaratory Relief Fails Because The Fifth Amendment Is A Compensation Remedy.

Plaintiff's Fourth Claim for declaratory relief is specifically brought under the Fifth Amendment Takings Clause. However, the Fifth Amendment "is designed not to limit the governmental interference with property rights *per se*, but rather to secure compensation in the event of otherwise proper interference amounting to a taking. *Lingle*, *supra*, 544 U.S. at 538, citing *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 314- 315 (1987). For this reason it is well established that injunctive and declaratory relief is not available to enjoin a Fifth Amendment taking. *United States v. Riverside Bayview Homes Inc.,* 474 U.S. 121, 127-28 (1985) ("Equitable relief is not available to enjoin an alleged taking of private property for a public use…" [S]o long as compensation is available for those whose property is in fact taken, the governmental action is not unconstitutional.")

///

///

///

## VII.   PLAINTIFF'S FIFTH AND SIXTH CLAIMS CANNOT BE MAINTAINED AND MUST BE DISMISSED.

Plaintiff's Fifth Claim invokes 28 USC §2201, *et seq*., in attempting an action for declaratory relief alleging that a controversy exists as to the constitutionality and validity of the Ordinance. Complaint ¶95. But the operation of the Declaratory Judgment Act is procedural only and does not extend the jurisdiction of federal courts. *Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671 (1950).  Instead, Plaintiff's claim must present a federal question in itself.  *Id*. at 672.  Here, Plaintiff's declaratory relief action piggybacks on her first four claims, none of which state a federal claim under the Commerce Clause or the Fifth Amendment of the U.S. Constitution. However, there is nothing for the Court to declare upon since the matters in controversy as to which Plaintiff asks for a declaratory judgment cannot be sustained as a matter of constitutional law.  Accordingly, Plaintiff's Fifth Claim also must be dismissed.  *Id*. at 674.

Plaintiff's Sixth Claim under 42 U.S.C. § 1983 suffers the same fatal defect. Plaintiff claims that the Ordinance violates constitutional rights guaranteed under the Commerce Clause and the Fifth Amendment.  Complaint ¶99.  As a threshold matter, however, to maintain a §1983 action, Plaintiff must demonstrate that these Constitutional provisions create an individually enforceable right in the class of beneficiaries to which she belongs.  *City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 119-120 (2005).  Because Plaintiff cannot state a claim under either the Commerce Clause or Fifth Amendment, her Sixth Claim also must fail.  Moreover, for the same reason, because Plaintiff's failure to exhaust state compensation remedies prevents her from bringing a takings claim, she cannot maintain her takings claim independently under §1983.  *Monterey v. Del Monte Dunes, Ltd.,* 526 U.S. 687, 721 (1999) ("A federal court…cannot entertain a takings claim under §1983 unless or until the complaining landowner has been denied an adequate post deprivation remedy.").

## VIII.  PLAINTIFF'S CLAIMS AGAINST THE CITY COUNCIL MEMBERS SHOULD BE DISMISSED

The City Council should be dismissed because legislators acting in their legislative sphere are entitled to absolute immunity.   The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law.  *Bogan v. Scott-Harri,* 523 U.S. 44, 49 (1998). Indeed, the Supreme Court has consistently held that state and local legislators are entitled to absolute immunity from civil liability or declaratory or injunctive relief for their legislative actions.  *See Bogan*, 523 U.S. at 49 (holding that "local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities"); *Supreme Court of Virginia v. Consumers Union of U. S.,* 446 U.S. 719, 732-33 (1980) (holding that immunity extends to actions seeking declaratory or injunctive relief). Accordingly, the City Council must be dismissed as the member legislative actions are entitled to absolute immunity.

## IX.    CONCLUSION

For the foregoing reasons, City Defendants respectfully request that this Court grant this Motion to Dismiss.


Dated: August 18, 2016                    MARSHA JONES MOUTRIE
                                          City Attorney

                                          By: /s/ *Jeanette Schachtner*
                                                JEANETTE SCHACHTNER
                                                Deputy City Attorney

                                          Attorneys for Defendants
                                          City of Santa Monica and the City Council of
                                          Santa Monica

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**