O

# United States District Court
# Central District of California

| | |
|---|---|
| ARLENE ROSENBLATT,<br><br>              Plaintiff,<br><br>    v.<br><br>CITY OF SANTA MONICA and THE CITY COUNCIL OF SANTA MONICA,<br><br>              Defendants. | Case No. 2:16-CV-04481-ODW-AGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [56], GRANTING MOTION TO SET ASIDE DEFAULT [55], AND DENYING REQUEST TO STRIKE [64]** |

## I.   INTRODUCTION

On December 1, 2016, the Court granted Defendants' motion to dismiss, dismissing all of Plaintiff's causes of action but allowing Plaintiff leave to amend. (ECF No. 51.)  On January 3, 2017, Plaintiff filed her First Amended Complaint ("FAC").  (ECF No. 52.)  Defendants' response to the FAC was due on January 24, 2017; when they did not respond by that date, Plaintiff requested entry of default. (ECF No. 53.)  Three days later, Defendants filed a motion to set aside the default and a motion to dismiss the FAC.  (ECF Nos. 55, 56.)  On February 13, 2017, Plaintiff filed an Opposition to the motion to dismiss, and on February 24, 2017, Defendants filed their Reply.  (ECF Nos. 62; 63.)  Asserting that the Reply was filed late,

Plaintiffs filed a request to strike it as untimely. (ECF No. 64.) All three pending matters are fully briefed and ready for decision.[1]

## II. FACTUAL BACKGROUND

Plaintiff's FAC alleges the same basics facts as her original Complaint, with a few additions. The case is about the City of Santa Monica's 2015 adoption of an ordinance banning "vacation rentals" of residential property (leasing an entire property on a short-term basis) but allowing "home sharing" (renting a private room within a host's home, with the host present in other portions of the home during the stay) ("the Ordinance"). (FAC ¶¶ 15(a)–(b).) Santa Monica is a popular tourist destination, and Plaintiff wishes to rent her home as a vacation rental to generate income. (*See id.* ¶¶ 55–56.) Since Defendants passed the Ordinance, she has not been able to do so. (*Id.* ¶ 56.)

Plaintiff alleges that short-term vacation rentals in Santa Monica are critical to interstate commerce, citing reports that Santa Monica is one of the most popular destinations in the area, and without the availability of vacation rentals, hotel room costs are prohibitively expensive for many out-of-state visitors. (*Id.* ¶¶ 24–27.) Plaintiff believes that the ability of vacation rentals to compete with the local hotel industry motivated Defendants' adoption of the Ordinance. (*See id.* ¶ 36.) She alleges that the Ordinance's ban on vacation rentals and on advertising vacation rentals violates the United States Constitution.

Plaintiff asserts causes of action for violation of the dormant Commerce Clause, declaratory relief regarding the alleged constitutional violations, and deprivation of constitutional rights under 42 U.S.C. § 1983, which were also alleged in her original complaint, and one new cause of action: violation of the California Coastal Act. (*See* Compl., ECF No. 3; FAC.)

## II. LEGAL STANDARD

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the plaintiff. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### III. MOTION TO SET ASIDE DEFAULT AND MOTION TO STRIKE

As a preliminary matter, the Court **GRANTS** Defendants' motion to set aside default (ECF No. 55) and **DENIES** Plaintiff's request to strike (ECF No. 64). Its reasoning for granting the motion to set aside the default is simply that Plaintiff does

not oppose it, and good cause appears for doing so. (ECF No. 61.) As for the denial of Defendants' request to strike Plaintiffs' Reply, the Court determines that the parties did not have an agreement regarding the briefing schedule, and Defendants' Reply was not otherwise late. Per the clerk of court's response, when parties stipulate to continue a hearing date, they are free to adopt the new date as the marker for the briefing schedule. (*See* Esensten Decl., Ex. 2, ECF No. 64-1.) Further, the correspondence that Plaintiff produces does not establish that the parties agreed to use the original hearing date as a marker for the briefing schedule; all it shows is that Plaintiff's counsel believed that the briefing deadline would be based on the original hearing date, and the parties agreed to leave any mention of a briefing deadline out of the stipulation. (*Id.*) As such, Defendants' Reply brief was not untimely.

## IV. MOTION TO DISMISS DISCUSSION

Firstly, Plaintiff asserts that Defendants' motion should be denied due to their failure to meet and confer prior to filing. (*See* Opp'n 8–9; L.R. 7-3.) The Court will not decide the motion on this basis. Plaintiff acknowledges that she had notice of Defendants' intent to file a motion to dismiss (Opp'n 8), and she does not claim any prejudice as a result of an apparently minimal meet and confer. (*See generally id.*) In fact, she claims that *Defendants* suffered as a result of their failure to meet and confer, since they argued unnecessary points that could have been avoided through a proper discussion with opposing counsel. (*Id.*) While the Court can assume that Plaintiff suffered prejudice as a result of having to respond to these extraneous arguments, Plaintiff makes no such claim outright, and because Defendants did not file their motion without warning, the Court will not base its decision on this argument.

As Plaintiff concedes, her first, second, and third causes of action are all based on violations of the dormant Commerce Clause. (Opp'n 9.) Therefore, the Court will analyze those causes of action together.

**A.    Dormant Commerce Clause-Based Claims**

Because the Court finds that Plaintiff has failed to state a claim for which relief can be granted under the dormant Commerce Clause, none of Plaintiff's claims that rely on the dormant Commerce Clause survive Defendants' motion to dismiss.

### 1. Legal Standard

The so-called dormant Commerce Clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (internal quotation marks omitted). In determining whether a law violates the dormant Commerce Clause, a court must first consider whether it discriminates on its face against interstate commerce or has a discriminatory effect. *American Trucking Assns., Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005). In the relevant context, "discrimination" means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994). In addition, a law will violate the Commerce Clause where it directly regulates interstate commerce, either by having an extraterritorial reach or an extraterritorial effect. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 583 (1986). If the court finds that the law is not facially discriminatory and does not directly regulate interstate commerce, the law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The party challenging the statute on dormant Commerce Clause grounds bears the burden of showing discrimination. *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 400 (9th Cir. 2015).

### 2. Application to Plaintiff's First Cause of Action

The Court finds that the Ordinance does not facially discriminate against or directly regulate interstate commerce and that its burdens do not overwhelm its local benefits.

///

### *i.* *Facial Discrimination or Direct Regulation*

First, Plaintiff argues that the Ordinance "directly regulates" interstate commerce and should be considered *per se* invalid under the dormant Commerce Clause. (Opp'n 10–13.) In support, she contends that the Ordinance affects transactions for Santa Monica home rentals that extend across state lines and transactions that involve residents of different states. (*Id.*) Further, she argues that the Ordinance negatively impacts interstate travel and the national economy, thus meeting the *Brown-Forman* standard for "extraterritorial effect." *See* 476 U.S. at 583.

Second, Plaintiff asserts that the Ordinance purposefully discriminates against out of state residents. (Opp'n 17.) She argues that because the Ordinance's purpose in banning vacation rentals is to avoid the negative effects of having travelers with no connection to Santa Monica in the city's residential neighborhoods, the Ordinance facially discriminates against foreign travelers.

The Court is not persuaded by these arguments. Simply because Internet payments, advertising, and communications for these vacation rental transactions extend over state lines or between residents of different states does not bring them within the definition of interstate commerce. No precedent has so held; indeed, courts finding direct regulation of interstate commerce consistently require restraint or control over *wholly* extra-territorial transactions and/or conduct. *Cf. Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 949–50 (9th Cir. 2013) (finding no dormant Commerce Clause violation where a statute banned the sale within California of foie gras produced from force-feeding birds, which Plaintiffs (unpersuasively) argued directly regulated farmers' conduct outside of California if they wished to import products into the state); *see also Estate of Graham v. Sotheby's Inc.*, 860 F. Supp. 2d 1117, 1124 (C.D. Cal 2012) (deciding that a statute requiring royalty payments in sales of art involving a California-based seller violated the dormant Commerce Clause because it controlled all sales of art regardless of location, so long as the seller resided in California); *Healy v. Beer Institute, Inc.*, 491 U.S. 324,

337 (1989) (determining that a statute requiring alcohol importers to affirm that prices are no higher than the prices being charged in bordering states violated the dormant Commerce Clause).

The transactions at issue primarily take place in California—that is where the properties are located. Plaintiff has not shown how the Ordinance could affect the home rental markets in other states or restrain transactions that hinge on goods or services outside of Santa Monica or California. The Court thus finds no support for the argument that the Ordinance directly regulates interstate commerce.

Further, the Ordinance does not facially discriminate against out-of-state interests. It treats them exactly the same as in-state interests: neither may operate short-term vacation rentals within the City. The case at bar is easily distinguishable from *City of Philadelphia v. New Jersey*, for example, which establishes that a state cannot ban the importation of a commercial product (in that case, solid waste for disposal) while still allowing the product if generated within its borders. 437 U.S. 617, 626–27 (1978). In attempting to overcome this, Plaintiff pits hotels, which she purports represent local interests, against vacation rentals, representing out-of-state interests, to illustrate that the Ordinance favors local interests. This argument is illogical. A hotel in Santa Monica can be owned by an in-state or out-of-state person or entity, just as would-be vacation rentals can. Similarly, Californians may wish to rent a hotel room or vacation rental in Santa Monica. The Ordinance treats all of these interests equally; there is only one set of rules, and it applies to all regardless of the origin of the interest. Therefore, the Court finds that the Ordinance does not discriminate against out-of-state interests.

### ii. *Relative Burdens and Benefits*

As the Court finds no facial discrimination or direct regulation of interstate commerce, it must now determine whether the statute's burdens on interstate commerce "clearly" outweigh its benefits. *See Pike*, 397 U.S. at 142. The Court considered this issue in deciding Defendants' first motion to dismiss, and this time, it

finds no differently. Plaintiff attempts to supplement her allegations in this area by including statements about the Ordinance's effects in her FAC. For instance, she alleges that as a result of the Ordinance, hotel prices in Santa Monica have increased, that tourism and tourism-related jobs have decreased in the City, and that middle-class homeowners are now deprived of a valuable source of income. (FAC ¶¶ 18, 53.) In addition, Plaintiff claims that the vacation rental industry is a $100 billion industry nationally, a "significant portion" of which is attributable to Santa Monica. (*Id.* ¶¶ 19, 69(e).) Thus, banning this industry allegedly constitutes a burden on interstate commerce in that it damages the nation economy. (*See* Opp'n 5.)

These additional allegations are insufficient because they do not demonstrate a high burden on interstate *commerce*; instead, they suggest burdens on the local economy of Santa Monica and some unspecified impact on the national economy. The benefits of the Ordinance, namely the preservation of housing stock and the quality and character of City neighborhoods, are much more concrete. (*See* FAC ¶ 50 (outlining the Ordinance's stated purpose).) Vague allegations about the disruption of the economy cannot overwhelm these benefits, especially in light of *Pike*'s "clearly excessive" standard. *Pike*, 397 U.S. at 142. Out-of-state visitors can still access Santa Monica, whether through traditional hotel rentals or through home sharing on sites like Airbnb, which the Ordinance explicitly permits (subject to certain parameters). (*See id.* ¶¶ 42–43.) As such, under *Pike*, Plaintiff's allegations regarding relative burdens and benefits are inadequate. 397 U.S. at 142. The Court finds that Plaintiff has failed to state a claim for violation of the dormant Commerce Clause upon which relief can be granted. Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's first cause of action. Because Plaintiff has already had an opportunity to amend her complaint with respect to this claim, the dismissal is **without leave to amend**.

///

///

### 3. Effect on Plaintiff's Second and Third Causes of Action

Plaintiff's second cause of action is for declaratory relief, and her third is for deprivation of constitutional rights under 42 U.S.C. § 1983. As stated above, Plaintiff concedes that her second and third causes of action are contingent on a finding of a violation of the dormant Commerce Clause. (*See* Opp'n 9.) Therefore, these causes of action are also **DISMISSED without leave to amend** by virtue of the fact that the Court dismisses Plaintiff's first cause of action for the underlying dormant Commerce Clause violation.

## V. CALIFORNIA COASTAL ACT

In her FAC, Plaintiff alleges a new cause of action: violation of the California Coastal Act. The Act creates a Coastal Commission for California communities lying in whole or in part within the "coastal zone," which covers roughly 1,000 yards from the high tide land inland. Cal. Pub. Res. Code § 30103(a). The Act grants the Commission the authority to approve development in coastal communities, and it has as its purpose preserving and increasing access to one of California's valuable natural resources: its coastline. *See generally id.* §§ 30000 et seq. The Act directs coastal communities to file with the Commission a Local Coastal Program ("LCP") outlining their compliance with the policies of the Act. *Id.* § 30500.

Plaintiff claims that Defendants failed to submit to the Commission a certified LCP prior to enacting the Ordinance, and further, that the ban constitutes "development" under the Act as it represents a change in access to the coast. (FAC ¶¶ 86; 88(a).) Moreover, Plaintiff alleges that the Ordinance is at odds with the policies of the Act because it decreases access to the coastal zone within Santa Monica's borders. (*Id.* ¶¶ 84–85.)

Defendants argue in response that the Coastal Act has no authority to override local legislation; instead, the Commission can only exert control over coastal *development* (as contrasted with regulations regarding land use). (*See* Mot. 16–18.)

While the Court agrees with Defendants' position that California case law makes it likely that the Commission does not have unrestricted authority to override local land use regulations such as the Ordinance, *see City of Malibu v. Cal. Coastal Comm.*, 206 Cal. App. 4th 549, 557 (2012), Plaintiff also alleges that Defendants failed to submit an LCP and that the Ordinance conflicts with the overall policies of the Act. Further, *Malibu* involved a city going back and forth with the Coastal Commission regarding amendments to its LCP; here, Plaintiff alleges that Defendants never submitted an LCP prior to enacting the Ordinance. *See Malibu*, 206 Cal. App. 4th at 557; (FAC ¶ 88(a).) As such, Defendants cannot show that Plaintiff has stated no claim on which relief can be granted under the California Coastal Act. The Court thus **DENIES** Defendants' motion to dismiss as to Plaintiff's fourth cause of action.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's first, second, and third causes of action, and **DENIES** it as to Plaintiff's fourth cause of action. (ECF No. 56.) Also, the Court **GRANTS** the motion to set aside default (ECF No. 55) and **DENIES** the request to strike (ECF No. 64.)

**IT IS SO ORDERED.**

March 30, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**